COMMONWEALTH *vs.* DANIEL L. DUSTIN.

Hampden.    September 13, 1977. — November 7, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Admissions and Confessions.    Constitutional Law,* Admissions and confessions.

Where a defendant who was in custody had consulted an attorney and twice refused to make any statements to police but later asked a police officer guarding him, "If I tell you something about the incident, will I be admitting my guilt?", to which the officer replied "You are not on the stand and you are not under oath. You can tell me anything you want to," statements made by the defendant following this exchange were not the result of a knowing and intelligent waiver of his right to remain silent and, although voluntary, were not admissible at trial. [613-616]

INDICTMENT found and returned in the Superior Court on April 22, 1976.

A motion to suppress evidence was heard by *Alberti,* J.

The Commonwealth's application for an interlocutory appeal was allowed by *Wilkins,* J., and the appeal was reported by him.

*L. Jeffrey Meehan,* Special Assistant District Attorney, for the Commonwealth.

*William K. Danaher, Jr. (John F. St. Clair* with him) for the defendant.

BRAUCHER, J.    The defendant was indicted for murder in the first degree and for assault and battery with a dangerous weapon. A judge of the Superior Court allowed his motion to suppress statements made by him to a police officer while in custody, and a single justice of this court allowed an interlocutory appeal to this court by the Commonwealth pursuant to G. L. c. 278, § 28E. We uphold the judge's ruling that the defendant did not make the volun-

tary and intelligent waiver of his constitutional rights required by controlling Federal precedent.

1. *The judge's findings.* We summarize the judge's findings of fact, which are supported by the evidence. An incident about 1 A.M. on Saturday, April 17, 1976, resulted in the death of the victim. The defendant was arrested about 7:30 P.M. the same day pursuant to an arrest warrant. He was given Miranda warnings twice that evening, and each time indicated that he understood his rights and did not wish to make a statement. Later the same evening he consulted with two attorneys, having retained the second after discharging the first. Both advised him not to talk to the police. Because Monday the 19th was a holiday, he was told that he would be in jail for two or three days awaiting arraignment.

About 4:30 P.M. on Sunday the 18th, the defendant asked the officer assigned to "watch" him, "If I tell you something about the incident, will I be admitting my guilt?" The officer replied, "You are not on the stand and you are not under oath. You can tell me anything you want to." The defendant said that if the officer repeated what he was told, the defendant would say he had lied. The defendant then made the statements now in issue.

The defendant was frightened and confused, and cried periodically. There was no evidence that the officer's reply to the defendant's inquiry was prompted by evil motive or an intent to deceive. There was no attempt to interrogate. But the defendant's question "clearly indicated that he was confused about the legal consequences of making a statement," and he "was effectively, though not intentionally, deceived by the officer's response."

The judge ruled that there was no "interrogation" of the defendant such as would trigger *Miranda* v. *Arizona,* 384 U.S. 436 (1966), and that in the absence of interrogation there was no violation of the Sixth Amendment rights set forth in *Brewer* v. *Williams,* 430 U.S. 387, 398-399 (1977). But, he ruled, the defendant "did not make a voluntary and intelligent waiver of his fifth amendment rights." The officer's "deceptive statement" distinguished

this case from *Commonwealth* v. *Frongillo*, 359 Mass. 132 (1971). Moreover, in the "novel situation" presented, "the officer should have given the *Miranda* warnings to the defendant."

2. *Voluntariness of the statements.* The Commonwealth vigorously asserts that the defendant's statements were voluntary, citing *Commonwealth* v. *Borodine*, 371 Mass. 1, 6 (1976), cert. denied, 429 U.S. 1049 (1977), and *Commonwealth* v. *Sousa*, 350 Mass. 591, 598-599 (1966). See *Commonwealth* v. *Harris*, 364 Mass. 236, 241-242 (1973), and cases cited. We assume, without deciding, that the traditional test of voluntariness was met, and the statements would have been admissible in evidence before the decision in the *Miranda* case, notwithstanding the deceptive statement by the police officer. *Frazier* v. *Cupp*, 394 U.S. 731, 739 (1969). They might also have been admissible if made to private persons rather than to police officers, if made by a defendant not in custody, or if offered only to impeach the credibility of the defendant as a witness. *Commonwealth* v. *Mahnke*, 368 Mass. 662, 676-678, 697-700 (1975), cert. denied, 425 U.S. 959 (1976). See *Garner* v. *United States*, 424 U.S. 648, 657-658 (1976).

3. *Waiver.* The Miranda decision requires that warnings be given prior to any questioning of a person in custody and that he be given a continuous opportunity to exercise his rights during any custodial interrogation. See *Commonwealth* v. *Mahnke*, 368 Mass. 662, 692 (1975), cert. denied, 425 U.S. 959 (1976); *Commonwealth* v. *McKenna*, 355 Mass. 313, 323-325 (1969). If interrogation continues and a statement is taken, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. . . . Moreover, any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda* v. *Arizona*, 384 U.S. 436, 475-476 (1966).

The judge found that there was no such interrogation

as to trigger the Miranda rule. We reject the defendant's argument that there was conduct "tantamount to interrogation" as in *Brewer* v. *Williams,* 430 U.S. 387, 399 n.6 (1977). But the defendant was in custody, and had been for more than twenty hours. He had been given Miranda warnings twice and each time had indicated that he wished to remain silent. "At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." *Miranda* v. *Arizona,* 384 U.S. 436, 474 (1966). Nevertheless, subsequent statements may be admissible if his "right to cut off questioning" has been "scrupulously honored." *Michigan* v. *Mosley,* 423 U.S. 96, 103-104 (1975). See *United States* v. *Olof,* 527 F.2d 752, 754 (9th Cir. 1975). Here the defendant asked, in effect, whether if he made a statement it could be used against him. The police officer's response carried an implication that it could not be. This was directly contrary to the required Miranda warning that anything the defendant said could and would be used against him in court.

Moreover, the defendant had been visited by two attorneys while in custody, as the police knew; each had advised him to remain silent. He had been informed of his right to counsel and appeared to understand it, and he was free to disregard the advice of counsel. "But waiver requires not merely comprehension but relinquishment," and his conversation with the police officer does not support any suggestion that he waived the right; the officer did not tell him that he had a right to the presence of a lawyer, and "made no effort at all to ascertain whether" he "wished to relinquish that right." See *Brewer* v. *Williams,* 430 U.S. 387, 404-405 (1977).

In this context we apply the rule that the Commonwealth bears a "heavy burden" to show a knowing and intelligent waiver, notwithstanding the absence of interrogation. The intention to waive constitutional rights must be made clear, without implication, inveiglement or subtlety, as it was, for example, in *Commonwealth* v. *Fron-*

*gillo,* 359 Mass. 132, 137 (1971). The judge who saw and heard the witnesses concluded that there was no voluntary and intelligent waiver, and we cannot say he was plainly wrong. See *Commonwealth* v. *Hosey,* 368 Mass. 571, 578-579 (1975). Even an innocent misrepresentation of the Miranda rights of the defendant renders suspect a claim that he waived those rights. See *Commonwealth* v. *Jones,* 457 Pa. 423, 435 (1974). The statement of the police officer is not easily characterized as "scrupulously" honoring Miranda rights; it seems rather to be "heedless" of those rights. See *Commonwealth* v. *Mahnke,* 368 Mass. 662, 692 (1975), cert. denied, 425 U.S. 959 (1976).

The facts of this case do not fall squarely within the holding of any binding Federal precedent. But we think faithful adherence to the spirit of the Federal cases we have cited and quoted requires us to uphold the judge's decision. The result is to exclude the defendant's statements from evidence, even though they were voluntarily made, even though they bear indicia of reliability, and even though they are found not to have been the product of any intentional violation of constitutional standards. If that result is thought undesirable, the remedy must be sought in a Federal forum. As to the jurisdiction of the Supreme Court to review such a case, see *Miranda* v. *Arizona,* 384 U.S. 436, 498 n.71 (1966).

The order of the judge allowing the motion to suppress evidence is affirmed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*