COMMONWEALTH vs. HECTOR L. ANDUJAR.

Worcester.    April 9, 1979. — June 15, 1979.

Present: HALE, C.J., ARMSTRONG, & DREBEN, JJ.

*Evidence*, Admissions and confessions, Hearsay. *Error*, Harmless. *Constitutional Law*, Admissions and confessions, Waiver of constitutional rights. *Waiver*.

A robbery suspect who was under arrest at a police station and who, after being warned of his right to remain silent, made a statement to police in the nature of an alibi, naming a person who had been with him, was under no obligation to contradict a noncorroborative statement made in his presence by that person shortly afterward. [779-780]

Although it was error to admit in evidence an out-of-court statement by a person who did not testify at the jury waived trial of a defendant charged with robbery, the error was harmless beyond a reasonable doubt, where the defendant himself testified to the statement and the statement was consistent with the alibi that he offered at trial. [780]

A suspect who initially asserted his right to remain silent when questioned by police could thereafter effectively waive his rights to remain silent and to consult with counsel when police interrogation resumed. [780-783]

A request by counsel for a robbery suspect that police questioning of the suspect be discontinued would, if made, be a factor for the judge to consider in determining whether the suspect had effectively waived his rights to remain silent and to consult with counsel when questioning by the police resumed, but such a request would not compel a conclusion that the suspect had not intelligently and voluntarily waived his rights. [783-785]

INDICTMENTS found and returned in the Superior Court on May 5, 1977.

The cases were heard by *Silverman*, J., a District Court judge sitting under statutory authority.

*Conrad W. Fisher (Andrew L. Mandell* with him) for the defendant.

*Lynn M. Turcotte,* Assistant District Attorney (*Daniel F. Toomey,* Assistant District Attorney, with her) for the Commonwealth.

HALE, C.J. The defendant appeals (G. L. c. 278, §§ 33A-33G) from his conviction following a jury waived trial on three indictments: two charging armed robbery (G. L. c. 265, § 17) and one charging assault with a dangerous weapon with intent to rob (G. L. c. 265, § 18). He argues that the judge erred when he (1) admitted certain hearsay testimony and (2) refused to suppress an inculpatory statement made by the defendant. We summarize the facts which could have been found by the judge.

About 5:45 P.M. on March 17, 1977, the defendant entered a market in Clinton and acted in a manner that aroused the suspicions of one Karpeichik, who was working there. Karpeichik wrote down the license number of the car in which the defendant left. When Officer Duggan, a Clinton policeman and a part-time employee at the market, arrived for work at about 6:00 P.M., Karpeichik gave him the paper on which he had written the license number. Some time later a customer, one Serewicz, entered the store. At about 7:30 P.M. a man holding a handgun and wearing a ski mask entered and said to Duggan, who was working in the front, "Don't move. Don't move. Money." Duggan, Serewicz and Karpeichik had all seen this man on previous occasions, and each recognized him as Hector Andujar, the defendant. Soon thereafter two more masked men, one of whom was armed with a rifle, entered the store. Duggan recognized the unarmed man as one Mendoza. The intruders ordered Duggan, Serewicz and Karpeichik to put their hands up. The armed men forced them to the rear of the store while Mendoza emptied the cash register and took two money bags and a gun from beneath the counter. The defendant ordered the men into the walk-in cooler and then fled with his companions. The victims quickly emerged from the cooler,

contacted the police and informed them of the robbery. About 8:00 P.M. that evening one Conger, an off-duty Clinton police officer who was unaware of the robbery, saw the defendant alight from a car driven by Mendoza on High Street in Clinton. Conger made a mental note of the license number of the car, which was later found to be the same as the number taken down earlier by Karpeichik.

1. The defendant was taken into police custody in Clinton by Officer Burke at approximately 1:00 A.M. on March 18, while in the company of Mendoza and another, and was taken to the Clinton police station. He was read the Miranda warnings in the police car. Officer Duggan was called to the station, and after the defendant was again advised of his Miranda rights by Burke, Duggan accused the defendant of robbing him that evening. The defendant denied the charge, stating that he had been at a party in Worcester all evening and that he had been driven there by one Santiago. At that point Duggan ceased the questioning and together with Burke went out to find Santiago. About an hour later Santiago was brought to the police station. There, in the presence of the defendant, Santiago said that he had driven the defendant to Worcester at about 3:00 P.M. that day but had not driven him there in the evening. The defendant made no response to that statement.

At trial the judge, over the defendant's objection, permitted Officer Duggan to testify to the contents of Santiago's statement, even though Santiago himself did not testify. That testimony was hearsay and should not have been admitted. The defendant's failure to deny Santiago's assertion was not an adoption of the statement which would bring it within any exception to the hearsay rule. The defendant was under arrest and had been alerted to his right to remain silent and to discontinue talk at any time. Under these circumstances, he "was under no obligation to say anything, let alone contradict a statement allegedly made in his presence." *Commonwealth* v. *Morrison*, 1 Mass. App. Ct. 632, 634 (1973). See *Commonwealth*

v. *Rembiszewski*, 363 Mass. 311, 316 (1973), and cases cited. Cf. *Commonwealth* v. *Harris*, 371 Mass. 462, 476 (1976).[1]

While Duggan's testimony should have been excluded, its admission does not call for reversal because it was harmless beyond a reasonable doubt. *Chapman* v. *California*, 386 U.S. 18, 24 (1967). *Commonwealth* v. *Hanger*, 377 Mass. 503, 510-513 (1979). *Commonwealth* v. *O'Connor*, ante 314, 318-319 (1979). The defendant himself had testified at a hearing on his motion to suppress that Santiago had said, "I brought him to Worcester at three o'clock" but that Santiago had said nothing more. After that hearing, the defendant waived a jury, and the trial proceeded jury waived after the defendant had stipulated that the entire testimony heard by the judge at the suppression hearing be adopted by the court as a part of the proceedings in the jury-waived trial. The defendant also later testified at trial to Santiago's statement.[2] Moreover, Santiago's statement was entirely consistent with the alibi the defendant offered at trial, which was that the ride he had gotten to Worcester on the evening of March 17 was with Mendoza and not with Santiago. In light of all this, the damage, if any, to the credibility of the defendant's alibi by Duggan's testimony was insignificant, and we cannot see how it could have contributed to the finding of guilt.

2. The defendant argues that his motion to suppress a statement which he made to police officers should have been allowed because the statement was obtained in a

---

[1] The defendant's initial decision to waive his right to remain silent and to offer an alibi did not here create a duty to respond to a statement apparently contradicting his alibi. We need not address the question whether there might be circumstances in which a defendant's behavior could allow a court to consider his silence in the face of a given statement as an adoption of it, even when he is under arrest and has been alerted to his Miranda rights. Compare *Commonwealth* v. *Rembiszewski*, 363 Mass. 311, 316 (1973).

[2] "He said, 'I took him this afternoon, but not at nighttime.'"

manner that violated his constitutional rights to consult with counsel and to remain silent.[3] We summarize the judge's findings, supplementing them where necessary with facts stipulated at the hearings on the motion to suppress.[4]

After having confronted Santiago, the defendant was placed in a cell at the police station. On the morning of March 18 Officer Conger took him to the courthouse for arraignment. An attorney, a Mr. Philbin, was appointed for the defendant for bail purposes only and consulted with him briefly in that connection. The Massachusetts Defenders Committee was appointed to represent him in subsequent proceedings, and the defendant was so informed. Officer Conger spoke with the defendant about the robbery while at the courthouse, but the defendant declined to make a statement at that time.[5]

Officer Conger brought the defendant back to the police station and about 2:00 P.M. placed him in the interrogation room, where, after a brief conversation, the defendant made known to Officer Conger his readiness to make a statement "to get it off his chest." Duggan joined the two when advised of this. Conger read the defendant the

[3] The motion was initially argued on the theory that the defendant never made the statement and signed the confession without understanding its contents. The defendant later renewed the motion and argued on the basis of the inadequacy of the defendant's waiver of counsel. It is only the latter with which we are now concerned.

[4] We are mindful that, in our review, we must accept the motion judge's resolutions of conflicting testimony, respect his subsidiary findings if supported by the evidence and grant substantial deference to his ultimate findings of fact, even though they are open for our examination. *Commonwealth* v. *Doyle,* 377 Mass. 132, 138 n.6 (1979). We recognize that we must indulge every reasonable presumption against waiver and that a heavy burden rests on the Commonwealth to prove a waiver. *Commonwealth* v. *Watkins,* 375 Mass. 472, 485 (1978).

[5] The defendant testified at the voir dire hearing held on the renewed motion to suppress that Mr. Philbin had told Officer Conger, in the defendant's presence, that Conger should not ask the defendant any questions, but the judge made no specific finding in this regard.

Miranda rights and gave him a "voluntary statement" form which fully listed his rights.[6] The defendant then indicated that he understood his rights and orally described his part in the robbery. Conger wrote down what he had said. The defendant then read over the "voluntary statement" form and the four pages of his statement as written out by Officer Conger and asked for some time to decide whether to sign them. Officers Duggan and Conger then left the room for a time, leaving the papers with the defendant. When they returned the defendant indicated that he wanted to sign the papers. He signed the "voluntary statement" form and the final page of the statement. The defendant was asked to initial a page of the statement where an error had been made, but he refused to do so. The judge found that the defendant had been informed of his Miranda rights on several different occasions, and that he had knowingly and intelligently waived them prior to making his statement. He found that the defendant signed the voluntary statement form and the statement itself with full knowledge of their content.

The defendant argues that his initial refusal to give a statement precluded a finding that he voluntarily and intelligently waived his rights to remain silent and to

[6] In addition to the usual Miranda warnings the form contained the following recitals:

"A. No one denied me any of my rights, threatened or mistreated me, either by word or act, to force me to make known the facts in this statement. No one gave, offered or promised me anything whatsoever to make known the facts in this statement, which I give voluntarily of my own free will and accord.

"B. I do not want to talk to a lawyer before or during the time I give the following true facts, and I knowingly and purposely waive my right to the advice and presence of a lawyer before and during this statement.

"C. I certify that no attempt was made by any law enforcement officer to prompt me what to say, nor was I refused any request that the statement be stopped, nor at anytime during this statement did I request for the presence or advice of a lawyer."

There is no indication in the record that the defendant made a request to see Mr. Philbin or any other attorney.

consult with counsel when he responded to renewed questioning at the police station. There is no per se rule prohibiting the resumption of questioning after a defendant has asserted his right to remain silent. *Michigan* v. *Mosley*, 423 U.S. 96, 101-104 (1975). *Commonwealth* v. *Watkins*, 375 Mass. 472, 479 (1978). There was evidence before the judge from which he could have determined that the defendant's right to cut off questioning was scrupulously honored and that the defendant validly waived his rights when the interrogation was resumed. See *Michigan* v. *Mosley*, 423 U.S. 96, 103 (1975); *Commonwealth* v. *Santo*, 375 Mass. 299, 304 (1978); *Commonwealth* v. *Watkins*, 375 Mass. at 484. Compare *United States* v. *Pheaster*, 544 F.2d 353, 367-368 (9th Cir. 1976), cert. denied sub nom. *Inciso* v. *United States*, 429 U.S. 1099 (1977); *United States* v. *Rodriguez-Gastelum*, 569 F.2d 482, 487-488 (9th Cir.) (en banc), cert. denied, 436 U.S. 919 (1978). But see *Commonwealth* v. *Taylor*, 374 Mass. 426, 432-436 (1978).

The defendant also argues that his attorney's alleged request for the cessation of interrogation prevented the police from subsequently obtaining from him a valid waiver of his rights. The record shows that the judge made no express finding as to whether Mr. Philbin had at any time told the police not to ask the defendant any more questions. A finding on this issue would have greatly facilitated our review. However, the judge's failure to make such a finding does not make the admission of the defendant's statement error, for even if the alleged request had been made, it would not, per se, have prevented a subsequent waiver by the defendant of his rights. A detained suspect has the right to be represented by an attorney, but there is no absolute constitutional requirement that his attorney, even if already retained or appointed, be present during, or notified prior to, an interrogation. *Commonwealth* v. *Santo*, 375 Mass. at 305. *Wilson* v. *United States*, 398 F.2d 331, 333 (5th Cir. 1968), cert. denied, 393 U.S. 1069 (1969). See *Brewer* v. *Williams*, 430 U.S. 387, 405-406, and also 413 (1977) (Powell, J., concur-

ring); *Coughlan* v. *United States,* 391 F.2d 371, 372 (9th Cir.), cert. denied, 393 U.S. 870 (1968); *United States* v. *Springer,* 460 F.2d 1344, 1350-1353 (7th Cir.), cert. denied, 409 U.S. 873 (1972); *United States* v. *Thomas,* 474 F.2d 110, 111-112 (10th Cir.), cert. denied, 412 U.S. 932 (1973); *United States* v. *Masullo,* 489 F.2d 217, 222-224 (2d Cir. 1973). Compare *United States* v. *Crisp,* 435 F.2d 354, 358-359 (7th Cir. 1970), cert. denied, 402 U.S. 947 (1971), and *Commonwealth* v. *Frongillo,* 359 Mass. 132, 136-137 (1971), with *Massiah* v. *United States,* 377 U.S. 201, 206-207 (1964). Contrast *People* v. *Vella,* 21 N.Y.2d 249, 251 (1967). The crucial issue in this situation is still whether the suspect voluntarily and intelligently waived his rights before making his statement. *Brewer* v. *Williams,* 430 U.S. at 404-406. The fact that a suspect's attorney has requested a cessation of the interrogation is simply one factor to be considered by the judge in the totality of the circumstances when he determines whether the suspect has made an effective waiver of his rights. See *Biddy* v. *Diamond,* 516 F.2d 118, 123 (5th Cir. 1975), cert. denied, 425 U.S. 950 (1976). Contrast *United States ex rel. Magoon* v. *Reincke,* 304 F.Supp. 1014, 1018-1019 (D. Conn. 1968), aff'd, 416 F.2d 69, 70-71 (2d Cir. 1969); *United States* v. *Howard,* 426 F.Supp. 1067, 1071 (W.D.N.Y. 1977). We conclude that there was ample evidence to support the judge's finding that the defendant had voluntarily and intelligently waived his rights to consult with counsel and to remain silent at the time he gave the statement.[7] See *Commonwealth* v. *Amazeen,* 375 Mass. 73, 78 (1978);

---

[7] This is not a case where the police breached an agreement with counsel not to interrogate the defendant (*Brewer* v. *Williams,* 430 U.S. 387, 405 [1977]), failed to make the defendant aware of defense counsel's immediate availability (*Commonwealth* v. *McKenna,* 355 Mass. 313, 324-325 [1969]; *Commonwealth* v. *Mahnke,* 368 Mass. 662, 692 [1975], cert. denied, 425 U.S. 959 [1976]), thwarted defense counsel's attempt to confer with his client (*Commonwealth* v. *McKenna,* 355 Mass. at 325; *Commonwealth* v. *Mahnke,* 368 Mass. at 692) or by ruse or trick induced the defendant to waive his right to counsel. *Commonwealth* v. *Dustin,* 373 Mass. 612, 614 (1977). *Commonwealth* v. *Jack-*

*Commonwealth* v. *Wallner,* 6 Mass. App. Ct. 886 (1978). There was no error in admitting the statement.

*Judgments affirmed.*

---

son, 377 Mass. 319, 327-329 (1979). *Brewer* v. *Williams,* 430 U.S. at
392-393. Neither was this an indirect or surreptitious interrogation.
*Massiah* v. *United States,* 377 U.S. 201, 206 (1964).