COMMONWEALTH *vs.* JEFFREY A. BRANT.

Norfolk.    May 15, 1979. — October 31, 1979.

Present: KEVILLE, BROWN, & DREBEN, JJ.

*Evidence*, Admissions and confessions. *Constitutional Law*, Admissions and confessions, Waiver of constitutional rights, Assistance of counsel. *Waiver. Practice, Criminal*, Instructions to jury, Comment by prosecutor.

Where a defendant in custody initially declined to be interrogated without the presence of his attorney but, after being informed that his codefendant had made a statement and being given an opportunity to speak privately with the codefendant, he changed his mind and initiated the resumption of interrogation, a finding was warranted that his subsequent statements were a result of a voluntary, knowing and intelligent waiver of his constitutional rights. [559-565] BROWN, J., dissenting.

After a defendant under arrest had voluntarily waived his right to remain silent, his silence in the face of comments made by a codefendant which generally corroborated the defendant's statements constituted admissions, and the prosecutor was, therefore, entitled to comment on the defendant's silence in his closing argument. [566-567] BROWN, J., dissenting.

INDICTMENT found and returned in the Superior Court on February 27, 1978.

A motion to suppress was heard by *Young*, J., and the case was tried before *Linscott*, J.

*Thomas P. McCusker, Jr.*, for the defendant.

*Charles J. Hely*, Assistant District Attorney, for the Commonwealth.

KEVILLE, J. On December 28, 1977, a clerk employed in a market located in Norwood was held up by two armed men who were masked. In the course of the robbery the clerk was shot and seriously wounded. The robbers fled and were not then apprehended. On February 4, 1978, the

defendant, Jeffrey A. Brant, and Neil Kampen, Jr., were arrested in Titusville, Florida, after a high speed chase in which shots were exchanged with the police.

Brant appeals pursuant to G. L. c. 278, §§ 33A-33G, from his conviction after a jury trial on an indictment arising out of the Norwood incident charging him with armed robbery while masked.[1] Brant argues two assignments of error on appeal.

He asserts error in the denial of his pretrial motion to suppress an incriminating statement made by him to police in Florida following his arrest which virtually amounted to a confession to the Massachusetts indictment. He also contends that the trial judge erred in permitting the prosecutor to argue to the jury that Brant had made no response to certain statements made by Kampen to the authorities and that the judge erred in instructing the jury that they could consider that failure to be an admission by Brant.

1. *Motion to Suppress.*

Whether the judge erred in denying Brant's motion to suppress turns on the resolution of two questions: whether the police scrupulously honored Brant's right to cut off questioning after he declined to be questioned without his lawyer being present, and whether his subsequent waiver of his right to remain silent was voluntarily and intelligently given. While the answers to these questions, as the motion judge acknowledged, are not free of difficulty, we conclude that there was no error.

In reviewing the judge's findings of fact and rulings of law on the motion to suppress, we accept his resolution of conflicting testimony. His subsidiary findings are not to be disturbed if warranted by the evidence. *Commonwealth* v. *Watkins*, 375 Mass. 472, 476 (1978). However, ultimate findings and conclusions of law, particularly those of constitutional dimension, are subject to indepen-

---

[1] His companion, Kampen, pleaded guilty following his indictment for the same offense.

dent review on appeal. *Commonwealth* v. *Mahnke*, 368
Mass. 662, 667 (1975), cert. denied, 425 U.S. 959 (1976).

We summarize pertinent facts drawn from the judge's
findings which are supported by the evidence taken at the
hearing on the motion to suppress. On February 5, the
day following their arrest, Brant and Kampen were
brought to court for a probable cause hearing and to fix
bail on certain Florida charges. They were represented by
a Florida public defender. They were then lodged in a
county jail in separate cell blocks and could not communi-
cate with each other.

On February 13 a court order relieved the public de-
fender from representing Brant and Kampen.[2] On that
day an assistant district attorney of Norfolk County, Tier-
nan, requested by phone of a Florida deputy sheriff,
Hudepohl (who appears to have been in charge of these
prisoners), that Hudepohl interview Brant and Kampen
concerning the robbery in Norwood. On February 14
Hudepohl interviewed Kampen and informed him of the
call from Massachusetts. He stated that he wished to
obtain Kampen's side of the story and that he would not
inquire about the Florida charges. Hudepohl carefully
informed Kampen of his Miranda rights and ascertained
that he understood them. Kampen replied "Yes" to Hude-
pohl's question "Do you wish to talk with me now without
a lawyer?" Kampen then gave the sheriff an inculpatory
statement which was recorded on tape and on the follow-
ing day was transcribed, signed by Kampen and nota-
rized. At the close of the interview Kampen was permit-
ted to talk briefly with Brant.[3]

---

[2] There appeared to be a conflict of interest between these defend-
ants and a juvenile who was apprehended with them and represented
by the same attorney.

[3] Omitted from the judge's findings but included in the transcript of
the motion to suppress was the indication that, prior to his interroga-
tion by the authorities, Brant had already discussed with Kampen the
possibility of making a "deal" to return to Massachusetts and thus
avoid the prospect of incarceration in Florida.

Kampen's inculpatory statement was communicated to Tiernan, who promptly secured complaints against him in Massachusetts for armed robbery while masked and for assault with intent to murder and then left for Florida with two police officers. The judge found that Kampen knowingly, intelligently and voluntarily waived his Fifth Amendment rights guaranteed under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and his Sixth Amendment right to have his attorney present.

On February 15 Kampen and Brant, new and separate counsel having been appointed to represent each of them, were arraigned on the Florida charges.[4] The Massachusetts officials and Hudepohl were present in court at the arraignment and knew that Brant and Kampen were represented by counsel. They intended to interrogate Brant later that day. That afternoon Brant and Kampen were brought to an interview room in the jail, where the Massachusetts officials and Hudepohl had gathered. Hudepohl turned on a tape recorder and began to read to Brant his rights from a document entitled "Brevard County Sheriff's Department Interrogation Preamble." Included therein was the question, "Are you willing to proceed without an attorney being present to represent you?" In the document this question is followed by a blank space for the response of the person being interviewed. When Hudepohl read the question to Brant, Brant replied "No." Hudepohl then wrote that response on the document.[5] One of the Massachusetts officials then

---

[4] The record on appeal is bare as to what, if any, advice was given to Brant by his court-appointed counsel save for the fact that on February 17 Brant was returned to court where, on the advice of counsel, who was present, he waived extradition proceedings and agreed voluntarily to return here to face the Massachusetts charges. The motion judge found that there was no suggestion that Brant was prevented from communicating with his attorney at any time.

[5] BREVARD COUNTY SHERIFF'S DEPARTMENT INTERRO-
GATION PREAMBLE

I, _____ am aware that I am (under arrest) or (suspect) [*for Armed Robbery while Masked and attempted murder*]. I have

mentioned the fact that Kampen had already given a statement to the police. Hudepohl stated that this was so and that Kampen's statement had been signed and notarized. Hudepohl then turned off the tape recorder. At that juncture, Kampen remarked that his statement was "all lies." Brant then requested a moment to speak with Kampen privately. That request was granted.[6]

Fourteen minutes later Brant and Kampen returned to the interview room. Brant asked that the tape recorder be turned back on as he wished to make a statement. Hudepohl complied with his request and again directed Brant's attention to the interrogation preamble and specifically to the question of Brant's willingness to proceed without an attorney being present to represent him. Brant himself crossed out the earlier response "No", wrote in "Yes", and signed his name indicating his willingness to make a statement without his attorney being present.

---

been advised and have had explained to me that prior to answering any questions or making any statement either oral or written that I am entitled to be represented by legal counsel (lawyer). I have also been advised that if I am without funds with which to secure counsel, the State of Florida will furnish me with an attorney. It has also been explained to me that any statement I make or question that I answer must be free and voluntary, without threat of punishment or promise of reward. I am aware that I have the right to remain silent and not bear witness against myself as guaranteed by the Constitution of the United States of America. It has also been explained to me that any statement made by me, either oral or written, can and will be used as evidence against me in Court.

It has also been explained to me that I may have an attorney present to represent me now or at any time during this interview and interrogation.

I understand that this interview and interrogation can and will be terminated at any time upon my request.

Q. Are you willing to proceed without an attorney being present to represent you?

A. _____

Signed _____

[6] The judge found that in permitting Brant to speak with Kampen the police "hoped and expected that Brant would change his mind and make a statement."

There followed questions by Hudepohl and answers by Brant. At some point, Kampen volunteered a response to a question and one of the Massachusetts officials joined the dialogue. At this point, Hudepohl reminded Kampen of his Miranda rights, ascertained that he understood them and obtained an affirmative answer when he asked Kampen whether he still wished to talk without having his attorney present. Other questions to Brant and Kampen followed with their responses, the latter virtually amounting to confessions to the Massachusetts offenses.[7]

Contrary to Brant's assertion, we cannot say that the judge erred in his conclusion that Brant's right to cut off questioning was scrupulously observed when, on February 15, having indicated that he did not wish to be questioned without his attorney being present, he was informed that Kampen had given a signed statement to the police. The judge was not confronted here with an evaluation of police conduct such as that in *Commonwealth* v. *Jackson*, 377 Mass. 319, 324 (1979), where a suspect's statement was induced by a deliberate false representation that the suspect's girl friend had implicated herself in the crime, or that in *Commonwealth* v. *Taylor*, 374 Mass. 426, 428 (1978), where subtle and persistent police persuasion induced an incriminating statement. See *United States* v. *Olof*, 527 F.2d 752, 753 (9th Cir. 1975); *Commonwealth* v. *Dustin*, 373 Mass. 612, 615 (1977); *United States* v. *Davis*, 527 F.2d 1110, 1111 (9th Cir. 1976); *Blackmon* v. *Blackledge*, 396 F. Supp. 296, 298-299

[7] The judge suppressed those statements by Kampen which had been volunteered on February 15 prior to Hudepohl's obtaining from him an express waiver of counsel's presence. He also suppressed affidavits of Kampen and Brant which had been attached on February 17 to the transcription of their joint statement made on February 15, as well as certain statements made by Kampen and Brant to one of the Massachusetts officers while en route to the airport on February 18. He assigned as the basis for the suppression, in each of these instances, the Commonwealth's failure to prove that the defendants expressly or implicitly waived their rights to the assistance of counsel prior to making the statements and executing the affidavits.

(W.D.N.C. 1975); *United States ex rel. Doss* v. *Bensinger*, 463 F.2d 576, 578 (7th Cir. 1972). Compare *United States* v. *Barnes*, 432 F.2d 89, 91 (9th Cir. 1970); *Commonwealth* v. *Andujar*, 7 Mass. App. Ct. 777, 782-783 (1979). Compare also *Commonwealth* v. *Watkins*, 375 Mass. 472, 484 (1978), where a defendant's statements made immediately following his initial request for counsel were suppressed because detectives continued to question him until he made a second request to see a lawyer.

The judge found that, following Brant's response that he did not wish to proceed without his attorney being present, the police did not further solicit him or apply coercion or pressure. While, as the judge found, Brant's questioners "hoped and expected" that he would make a statement, no questioning of him followed the factual disclosure that Kampen had given the police a statement until Brant, having at his request been given an opportunity to confer with his companion, changed his mind and initiated the resumption of interrogation. Brant was then facing the prospect of criminal charges against him in two jurisdictions. It was obviously to his advantage, before responding to questions in regard to the Massachusetts charges, to know that his companion had given the police a statement and whether he had been implicated therein. Where an accomplice has in fact made an inculpatory statement to the police it is permissible and, as in this instance, it may be informative rather than coercive for the police to make that fact known to a suspect who has invoked his right to cut off questioning in order that he may make a realistic evaluation of his position in light of the change in circumstances. *Commonwealth* v. *Jackson, supra* at 327 n.7. See *Hill* v. *Whealon*, 490 F.2d 629, 631 (6th Cir. 1974). Compare *United States* v. *Mearns*, 443 F. Supp. 1244, 1253 (D. Del. 1978). Contrast *United States* v. *Crisp*, 435 F.2d 354, 357 (7th Cir. 1970); *United States* v. *Priest*, 409 F.2d 491, 493 (5th Cir. 1969).

The rule based upon the Fifth Amendment to the United States Constitution that, if a suspect indicates in

any manner at any time prior to or during questioning that he wishes to cut off questioning, the interrogation must cease (*Miranda* v. *Arizona*, 384 U.S. 436, 473-474 [1966]) does not mean that questioning must cease forever. It permits renewal of interrogation in proper circumstances. The court in *Michigan* v. *Mosley*, 423 U.S. 96, 102 (1975), observed that a "blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity and deprive suspects of an opportunity to make informed and intelligent assessments of their interests."[8]

Although Brant and Kampen conversed for not more than fourteen minutes before interrogation was resumed, that hiatus was not insignificant in light of the facts that the conversation had been requested by Brant and that he had initiated the resumption of interrogation when he directed Hudepohl to turn the tape back on at the conclusion of their conversation. Contrast *United States* v. *Mearns, supra* at 1253; *Commonwealth* v. *Taylor*, 374 Mass. at 428-429.

Bearing in mind the heavy burden which rests on the Commonwealth to demonstrate a voluntary, knowing and intelligent waiver, *Hill* v. *Whealon, supra* at 630, compare *Commonwealth* v. *Jackson, supra* at 324, *Commonwealth* v. *Dustin*, 373 Mass. at 615, we think that the judge was right in his conclusion that Brant's spontaneous declaration of his desire to have the interrogation resumed constituted an effective waiver of his earlier declination to respond to questioning in the absence of his attorney. *Commonwealth* v. *Watkins*, 375 Mass. at 484.

---

[8] The argument against an absolute rule with respect to silence has been held applicable equally to situations involving the right to counsel. *Commonwealth* v. *Watkins*, 375 Mass. 472, 483-484 (1978).

2. *Argument and Charge.*

Brant next argues that the prosecutor made what amounted to constitutionally impermissible remarks in his closing argument which irreparably prejudiced Brant's right to a fair trial. Specifically, the defendant alleges that the prosecutor argued improperly in reminding the jurors that, during the course of Brant's inculpatory statement to the authorities on February 15, statements were made by Kampen which corroborated Brant's admissions and which were not denied by Brant. Brant argues in essence that this allusion to Kampen's unchallenged statements compromised Brant's right to silence. Brant further argues that the trial judge compounded the problem in his instructions to the jury. The defendant's arguments lack merit.

The short answer to those contentions is that one cannot preserve what one has already waived. It is settled that extrajudicial accusatory statements made in a defendant's presence are not admissible as evidence against him where he is under arrest and maintains his right to silence, *Commonwealth* v. *Locke,* 335 Mass. 106, 115 (1956), and as a corollary, that the prosecutor is not permitted to allude to the defendant's silence, *Commonwealth* v. *Egan,* 357 Mass. 585, 591-592 (1970); *Commonwealth* v. *Morrison,* 1 Mass. App. Ct. 632, 634 (1973). Here, however, Brant did not maintain his right to silence. Kampen's statements were made in the midst of those being made by Brant. Brant's "silence" occurred only while Kampen made statements which generally corroborated what Brant had just stated. Brant and Kampen, in effect, made a joint confession, and as such the statements were competent evidence. *Commonwealth* v. *Brown,* 121 Mass. 69, 80 (1876). *Commonwealth* v. *Trefethen,* 157 Mass. 180, 197-198 (1892). *Commonwealth* v. *Lucas,* 332 Mass. 594, 597 (1955). It follows that the prosecutor's reference to Kampen's statements in no way compromised Brant's right to silence which he had already relinquished. Contrast *Commonwealth* v. *Bennett,*

2 Mass. App. Ct. 575, 580 (1974). Furthermore, the judge's instruction permissibly informed the jury that they could, in this context, infer from Brant's silence an admission of the truth of Kampen's statements, which, as we have observed, merely corroborated what Brant had already said. See *Commonwealth* v. *Brown, supra* at 80. See also *State* v. *Cooley,* 221 S.W. 2d 480, 485 (Mo. 1949).

*Judgment affirmed.*


BROWN, J. (dissenting). I respectfully dissent. I believe the motion judge misapplied the constitutional standards to the fact-finding process from the start.[1]

It seems to me that while the judge made passing application of the "scrupulously honored" standard, he in fact employed it interchangeably with "waiver" analysis. Not only is this mode of analysis, in my view, wrong, but it has provided a continual source of difficulty and confusion in the trial courts; consequently, our appellate courts' analyses of circumstances such as those presented here must in the future be more carefully defined. There is great need to address this important question, providing as much clarity as possible, because *Miranda* v. *Arizona,* 384 U.S. 436 (1966), and *Michigan* v. *Mosley,* 423 U.S. 96, 100 (1975), stand squarely for the proposition that even though a statement may eventually be volunteered,[2] it is not admissible if the defendant's rights were not

[1] Although a judge's subsidiary findings will not be disturbed if they are warranted by the evidence, "[o]ur appellate function requires that we make our own independent determination on the correctness of the judge's 'application of constitutional principles to the facts as found.'" *Commonwealth* v. *Haas,* 373 Mass. 545, 550 (1977).

[2] Accord, *Commonwealth* v. *Dustin,* 373 Mass. 612, 616 (1977), cert. denied, 435 U.S. 943 (1978). Although the facts in *Dustin* are different in part from the facts here, it is highly instructive to note the court's concluding remarks regarding suppressing evidence:

"The result is to exclude the defendant's statements from evidence, even though they were *voluntarily* made, even though they bear in-

scrupulously honored. Therefore, the proper sequence of inquiry must be: first, and principally, did the police scrupulously honor the defendant's rights? The focus must be on the police's behavior and intent, not on the conduct of the defendant. Then, only after that question is answered in the affirmative, should we reach the question whether the defendant waived his rights. This issue is somewhat cloudy because *Commonwealth* v. *Taylor*, 374 Mass. 426, 432-435 (1978), employs the scrupulously honored standard; *Commonwealth* v. *Jackson*, 377 Mass. 319, 325-329 (1979), in fact employs that standard but also mentions in passing the waiver/voluntariness standard as though both were on equal footing; and *Commonwealth* v. *Watkins*, 375 Mass. 472, 484 (1978), rests on waiver analysis. This court's decision in *Commonwealth* v. *Andujar*, 7 Mass. App. Ct. 777, 784-785 (1979), implies that waiver is the "crucial issue."[3]

The motion judge here, understandably unsure of the proper standard, employed both the "scrupulously honoring" and the waiver standard, hence conflating constitutional principles which I believe must remain distinct.

---

dicia of reliability, and even though they are found not to have been the product of any intentional violation of constitutional standards [emphasis supplied]." *Id.*

It might be further stressed that in *Dustin*, unlike here, there was no intention exhibited by the police to influence the defendant to confess.

[3] Nevertheless, *Taylor, Jackson, Watkins,* and *Andujar*, in sum, demonstrate that while police may resume interrogating a suspect after he has at an earlier time asserted his right to remain silent and his right to the assistance of counsel, they may do so only after some substantial intervening factor has occurred — either the passage of time, in *Mosley*, 423 U.S. at 104-105, and *Andujar*, 7 Mass. App. Ct. at 781, where it was a couple of hours, or, as in *Watkins*, 375 Mass. at 478, the opportunity to speak with one's lawyer — which firmly demonstrates that the authorities scrupulously honored the suspects' right to immediately cut off questioning. Indeed, the Massachusetts cases are firm in announcing that under no circumstances may authorities avoid defendants' rights by attempting subtly to influence the defendant to "volunteer" a confession.

Commonwealth v. Brant.

Moreover, although the motion judge correctly recognized that the defendant's Sixth Amendment rights as well as his Fifth Amendment rights may have been violated, his interpretation of the legal principles applicable to such circumstances was, in my view, also erroneous. See e.g., *Miranda* v. *Arizona*, 384 U.S. at 444-445, 469-470, 474 & n.44; *Michigan* v. *Mosley*, 423 U.S. at 104; *Brewer* v. *Williams*, 430 U.S. 387, 403-406 (1977). Cf. *Oregon* v. *Hass*, 420 U.S. 714 (1975) (implies that where suspect was told of his rights and asked for a lawyer, yet police questioning continued in violation of Miranda, the statements that resulted could not be used in the prosecution's case in chief). The decision in *Commonwealth* v. *Taylor*, 374 Mass. at 435-436 provides the most illustrative guidance in circumstances such as the present. See *United States* v. *Barnes*, 432 F.2d 89, 91 (9th Cir. 1970). See also *Commonwealth* v. *McKenna*, 355 Mass. 313, 323-325 (1969); *Commonwealth* v. *Murray*, 359 Mass. 541, 545-546 (1971). But see *Brewer* v. *Williams*, 430 U.S. at 405-406.

There is a critical difference between "scrupulously" honoring a suspect's rights after he has indicated a desire merely not to respond to questions by law enforcement officials and honoring his rights after he has indicated that he does not wish to answer any questions unless an attorney is present.[4] See *Brewer* v. *Williams, supra* at 405 n.10; *Michigan* v. *Mosley*, 423 U.S. at 104 n.10 and at 109-110 (White, J., concurring in result). Cf. *United States* v. *Massimo*, 432 F.2d 324, 327 (2d Cir. 1970) (Friendly, J., dissenting), cert. denied, 400 U.S. 1022 (1971). See also

[4] The majority opinion apparently does not regard as relevant the fact that Brant initially asserted his right to speak with an attorney on the day he was arrested (February 4, 1978). I thus think it important to emphasize that the statements sought to be suppressed were made at a time when the defendant had indicated, as he had done at his first encounter with the authorities, that (as the judge found) he was not "willing to proceed without an attorney being present to represent him." See *Massiah* v. *United States*, 377 U.S. 201, 206 (1964); *Brewer* v. *Williams*, 430 U.S. at 400-401. See also *Commonwealth* v. *Murray*, 359 Mass. at 545.

*Miranda* v. *Arizona*, 384 U.S. at 474 ("the interrogation must cease until an attorney is present").

Here, unlike *Commonwealth* v. *Watkins*, 375 Mass. at 484, the motion judge found that the defendant "already had an attorney appointed to represent him" (compare *Commonwealth* v. *Williams*, 378 Mass. 217, 226-227 & n.9, and cases cited therein [1979]), and the law enforcement officials knew this, as well as the attorney's name. Nevertheless, immediately following Brant's assertion of his rights they initiated a tactic "designed to undermine" his decision (*Commonwealth* v. *Jackson, supra* at 326), which, although not interrogation per se, when viewed in context is analogous to that conduct in *Commonwealth* v. *Taylor, supra* at 430, which was proscribed for being a "subtle" attempt to get the defendant to talk.[5]

Although the majority opinion, in distinguishing this case from *Taylor*, correctly characterizes the proscribed police behavior in that case as "persuasion," it does not appreciate the full implications of *Taylor*. *Taylor* in fact

[5] The judge found that on the morning of February 15, Massachusetts authorities and Deputy Sheriff Hudepohl were in court when Brant was arraigned and assigned a new attorney. At this time, having already secured a statement from Kampen, they nonetheless had formed an intention to interrogate Brant later that day, notwithstanding the fact that Brant and his attorney were before them, offering an opportunity for the authorities to apprise Brant and his attorney of their evidence and their intention. Later, when Brant unequivocally asserted his rights, the authorities nonetheless used as leverage information regarding Brant's codefendant's statement to influence Brant to talk. This might be readily inferred from the judge's finding that the authorities' statements were "not without significance ... [as] evidenced by the fact that Kampen immediately denied the veracity of his [own earlier] statement." Furthermore, according to the judge's findings the officials did not take Brant back to his cell after he exercised his rights, as was the case in *Andujar*, 7 Mass. App. Ct. at 779, and *Mosley*, 423 U.S. at 97-98, or afford him the opportunity to speak to his lawyer, as was the case in *Watkins*, 375 Mass. at 478, but rather allowed him to go out into the hallway with the very person who had made a statement against him, which move they "hoped and expected" would influence Brant to "change his mind and make a statement."

stands for the proposition that subtle police behavior which manifests a desire to encourage a defendant to relinquish his once-asserted rights is inconsistent with "scrupulously honoring" a suspect's rights. Consequently, I believe this case and *Taylor* are on all fours. Moreover, the reasoning in *Jackson* is in accord.

The judge specifically found here that "the police, in permitting Brant to speak with [the codefendant], hoped and expected that Brant would change his mind and make a statement." See *United States* v. *Barnes*, 432 F.2d at 91. The majority conceded this point.[6] See majority opinion note 6, *supra*.

There is no point in having a "right" to have an attorney present during interrogation[7] if law enforcement officials persist in attempting to obtain a statement during the temporary absence of appointed counsel, thereby causing the defendant to "waive" that right. See *Michi-*

---

[6] Moreover, the larger picture, which uncontroverted government testimony vividly paints, adds further significance to the fact that the police "hoped and expected that Brant would change his mind and make a statement."

The record of the suppression hearing reflects that *all* witnesses said that "conversation" took place amongst the officials concerning their trip back to Massachusetts. This occurred while Brant was in the interrogation room, subsequent to his assertion of his rights and subsequent to "statements" made by the officials that his codefendant had already confessed. This fact is crucial in assessing the effect that such "statements" may have had on Brant, as well as the officials' intention in making them. We know from the judge's findings that Brant had heard that were he to go to prison in Florida he would be subjected to homosexual attacks. Indeed, Brant's eagerness to get out of Florida, as well as the authorities' awareness of that fact, is readily apparent from the judge's findings and the transcript.

Viewed in this light, the officials' apprising Brant that his codefendant had already confessed cannot reasonably be seen as an attempt on their part to stand vigil over Brant's best interests. The over-all picture demonstrates the contrary.

[7] It cannot be gainsaid that there are no other situations where an attorney's presence is more critical. See *Watts* v. *Indiana*, 338 U.S. 49, 59 (1949) (Jackson, J., concurring and dissenting) ("any lawyer worth his salt will tell the suspect in no uncertain terms to make no statement to police under any circumstances").

*gan* v. *Mosley*, 423 U.S. at 110 n.2 (White, J., concurring in result). See generally *Escobedo* v. *Illinois*, 378 U.S. 478, 484-492 (1964).

Furthermore, I believe, as the motion judge impliedly ruled, that once counsel has been appointed, a showing of "waiver requires not merely comprehension but relinquishment." *Brewer* v. *Williams*, 430 U.S. at 404. No such showing has been made on this record. The subsidiary findings of the motion judge provide insufficient affirmative evidence that in this context the defendant freely relinquished his right to counsel.[8] See *Commonwealth* v. *Murray*, 359 Mass. at 546.

While I would not find that the defendant's waiver was a "spontaneous declaration" (compare *Commonwealth* v. *Watkins*, 375 Mass. at 484) or that it was permissible in this context for the law enforcement officials to tell the defendant that his codefendant had made an inculpatory statement (compare *United States* v. *Barnes, supra*; but see *Commonwealth* v. *Jackson*, 377 Mass. at 327 n.7 [1979]), both are to some degree beside the point because "the defendant had an attorney at the time he made the alleged statements." Cf. *Commonwealth* v. *Williams*, 378 Mass. at 226. Consequently, once Brant asserted his right to counsel all communication regarding the charges should have ceased until he was given a real opportunity to speak with his attorney.[9] I buttress this view with the additional facts that the defendant's attorney was known by name to the police, and that this was not the initial

[8] "Warnings by law enforcement officers and subsequent action by the accused that might suffice to comply with Fifth Amendment strictures against testimonial compulsion would not necessarily meet what I regard as the higher standard with respect to waiver of the right to counsel that applies when the Sixth Amendment has attached." *United States* v. *Massimo*, 432 F.2d 324, 327 (2d Cir. 1970) (Friendly, J., dissenting), cert. denied, 400 U.S. 1022 (1971). Accord, *United States* v. *Satterfield*, 558 F.2d 655, 657 (2d Cir. 1976).

[9] It could persuasively be argued that all communications regarding the charges should go through the defendant's counsel. See S.J.C. Rule 3 : 22, DR 7-104(A) (1), 359 Mass. 820-821 (1972).

confrontation, but an attempt to take up questioning (i.e., regive Miranda warnings) in circumstances where earlier no questioning had taken place because of Brant's request to speak with an attorney.[10] See *Commonwealth* v. *Taylor, supra,* at 435-436; *Michigan* v. *Mosley,* 423 U.S. at 101 n.7. Cf. *Commonwealth* v. *McKenna, supra* at 324. Contrast *Commonwealth* v. *Santo,* 375 Mass. 299, 305 (1978) (the defendant expressly stated that he did not want to speak to an attorney who had represented him in other actions). Contrast also *Commonwealth* v. *Watkins, supra* at 478 (where the defendant was indeed given an opportunity to call his lawyer; here the defendant was given an opportunity to speak with the very person who had inculpated him).

In sum, I disagree with the motion judge's interpretation of the relevant Federal and State decisions and with his application of them to the facts in the instant case. I am unable to find on this record that, after the defendant said initially that he wanted legal representation and would not make a statement in the absence of counsel and following the appointment of counsel, the defendant's rights to cut off questioning, especially his Sixth Amendment right, were "scrupulously honored" in face of police behavior which manifested a desire to influence the defendant to talk after his counsel had departed. See *United States* v. *Olof,* 527 F.2d 752, 753-754 (9th Cir. 1975); *United States* v. *Barnes, supra*; *United States* v. *Rodriguez-Gastelum,* 569 F.2d 482, 488-489 (Goodwin, J., concurring and dissenting), & 589-591 (Hufstedler, J., dissenting) (9th Cir.), cert. denied 436 U.S. 919 (1978). See also in this regard *Brewer* v. *Williams,* 430 U.S. at 415 (Stevens, J., concurring), wherein the fundamental importance of counsel in safe-guarding the interests of both the accused and society is discussed. Justice Stevens emphasizes that when a client places his trust in counsel, and counsel in turn places his trust in law enforcement au-

[10] See note 4, *supra.*

thorities, if authorities nonetheless dishonor this trust and seek to influence the suspect to relinquish his rights outside of his lawyer's presence, both the individual and society suffer.

In sum, I think that the law enforcement officials did not "scrupulously honor" the defendant's right to cut off questioning, *Michigan* v. *Mosley*, 423 U.S. at 104, nor has the Commonwealth sustained its heavy burden of showing a knowing, intelligent, and voluntary waiver of that right. *Miranda* v. *Arizona*, 384 U.S. at 473-475. See *Commonwealth* v. *Sires*, 370 Mass. 541, 544 n.2 (1976), and cases cited. Accordingly, the motion to suppress should have been allowed in full, and the defendant should have a new trial free from the tainted evidence.

As I believe that all the statements made by the defendant while in custody to Florida law enforcement officials should not have been admitted in evidence, it goes without saying that testimony of police officers as to what he did not say is constitutionally proscribed.