COMMONWEALTH *vs.* LAWRENCE D. TAYLOR.

Suffolk. September 12, 1977. — February 21, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Evidence,* Admissions and confessions. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Practice, Criminal,* Exceptions: failure of Commonwealth to save exception. *Waiver.*

At a hearing on a defendant's motion to suppress statements made by him to the police, there was ample evidence to warrant the judge's finding that a second police interrogation, conducted only minutes after the defendant, on the advice of counsel, had asserted his right to remain silent, violated the defendant's privilege against self-incrimination. [431-436]

INDICTMENT found and returned in the Superior Court on March 11, 1975.

A motion to suppress evidence was heard by *McGuire,* J.

The Commonwealth's application for an interlocutory appeal was allowed by *Kaplan,* J., and the appeal was reported by him.

*Timothy P. O'Neill,* Assistant District Attorney (*James E. Caffrey,* Special Assistant District Attorney, with him) for the Commonwealth.

*John P. White, Jr.,* for the defendant.

QUIRICO, J. The defendant was indicted for murder in the first degree, assault with intent to rob while being

armed, and armed robbery. Prior to trial, the defendant filed a motion to suppress statements made by him to the police while in custody. After hearing, a judge of the Superior Court denied the motion on November 14, 1975. Thereafter, on June 1, 1976, the judge, sua sponte, held a further hearing on the motion to suppress in light of the United States Supreme Court's decision in *Michigan* v. *Mosley*, 423 U.S. 96 (1975), and on July 16, 1976, he vacated his previous ruling and allowed the defendant's motion. The Commonwealth applied for interlocutory appeal pursuant to G. L. c. 278, § 28E, and leave was granted by a single justice of this court.

This appeal presents two issues for our consideration. They are: (1) whether the Commonwealth may properly claim an appeal when it did not save an exception to the order allowing the motion to suppress, and (2) whether the judge properly allowed the defendant's motion to suppress statements made by him during a second police interrogation, conducted after the defendant, acting on the advice of counsel, had asserted his right to remain silent. We hold that the judge properly allowed the motion.

The pertinent facts found by the judge after the second hearing are as follows. At approximately 10:30 A.M. on November 18, 1974, Mr. Andrew Ketterer, a lawyer with the Roxbury Defenders Committee, met the defendant at the Municipal Court of the Roxbury District, in order to represent him in regard to his surrender on outstanding warrants. Mr. Ketterer brought the defendant to the District 2 police station for booking and requested the booking sergeant to return the defendant to court for arraignment after the booking. Mr. Ketterer then left the police station.

Detective O'Malley, who was assigned to assist in the investigation of a homicide for which the defendant was a suspect, learned of the defendant's presence at the police station, so he went there, arriving sometime after 10:30 A.M. Detective O'Malley brought the defendant upstairs to the detective room at the police station. There he gave the Miranda warnings to the defendant who indicated he un-

derstood. He then began to question the defendant concerning his whereabouts at the time of three robberies in a certain flower shop-subpostal station.

About 11:15 A.M. Sergeant Hudson and Detective McConkey arrived at the police station. Sergeant Hudson wished to interrogate the defendant in regard to a homicide so he ordered Detective O'Malley to request Mr. Ketterer to return to the station. When Mr. Ketterer arrived at the station at approximately 11:30 A.M., Sergeant Hudson told him that he wished to interrogate the defendant about a homicide on Sunnyside Street, Jamaica Plain, on October 14, 1974. The sergeant outlined some basic facts of the homicide and told Mr. Ketterer that he wanted the defendant's story.

Mr. Ketterer told Sergeant Hudson that he would not be representing the defendant on the homicide charge, but probably would on the robbery charges. (As an attorney attached to the Roxbury Defenders Committee, Mr. Ketterer could not have been appointed to represent the defendant on a homicide charge.) There were no current proceedings against the defendant in regard to the homicide. Mr. Ketterer then conferred with the defendant, out of the hearing of the police officers, and advised him that he should not make any statement about involvement in, or knowledge of, the incident. Then, while the attorney was still in the room, the defendant was asked if he wished to answer any questions about the homicide of October 14, 1974. The defendant stated that on advice of counsel he did not wish to say anything. After this response, Detective McConkey said to Mr. Ketterer, who had started to leave the police station, that the defendant could change his mind and talk to the police, even though at this time he chose not to.

About five minutes after Mr. Ketterer left, there was a conversation between the defendant and Detective McConkey. During this conversation the detective placed on the desk in front of the defendant a poster containing a photograph of the defendant and of another person, giving their names and descriptions, and stating in large print:

"WANTED FOR ARMED ROBBERY OF A POST OF-FICE." The detective then told the defendant that he could not have been in Florida at a certain time[1] because they had discovered his fingerprints at the scene of a flower shop-post office robbery. The defendant then responded, "I was there, but I didn't do the stabbing." Apparently in making that statement the defendant was referring to the homicide on Sunnyside Street, and not the post office robbery. Detective McConkey then asked the defendant, "Do you want to talk to us about this, even though your attorney has just advised you not to talk to us about this?" The defendant replied, "Yes, I do." The defendant was then taken to an adjoining room where a tape recorder was set up, and, after again being given the Miranda warnings, the defendant gave an incriminating statement to the police. This statement was given in the absence of Mr. Ketterer who did not return to the police station after he had advised the defendant not to discuss the case. Thereafter, the defendant was arrested, booked, fingerprinted, and photographed, and arraigned the following morning.

In his written decision after the second hearing on the defendant's motion to suppress, the judge concluded that the major issue was the effect of the recent decision in *Michigan* v. *Mosley*, 423 U.S. 96 (1975). The judge noted that the Court in *Mosley* had prescribed "several crucial considerations" to be applied in a case where a defendant, after indicating that he does not want to talk, nevertheless is interrogated further and subsequently makes an incriminating statement. Foremost among such considerations is the requirement "that the admissibility of statements obtained after the person in custody has decided to remain silent

---

[1] The detective's comments concerning the defendant's whereabouts in Florida apparently relate back to an earlier statement allegedly made by the defendant to the police, and testified to at the hearing by the detective, that the defendant was in Florida during the first week of October, 1974. Although the judge noted the detective's comments about the defendant's presence in Florida, he did not specifically find the defendant to have stated earlier that he was in Florida.

depends under *Miranda,* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Michigan* v. *Mosley, supra* at 104, quoting from *Miranda* v. *Arizona,* 384 U.S. 436, at 474 and 479 (1966), respectively.

The judge found, in reviewing the circumstances leading up to the defendant's admission in the present case, that the defendant's right to cut off questioning was not scrupulously honored. In so finding, he cited the police officers' failure to cease questioning the defendant immediately when he indicated his unwillingness to answer questions, the very short time interval between the first and second interrogation of the defendant, and the "subtle" manner of questioning utilized by the police at the second interrogation in attempting to influence the defendant to talk about the homicide even though he had previously declined to answer such questions. Consequently, the judge ruled that the statements made by the defendant to the police should be suppressed.

1. *Commonwealth's failure to save exception to allowance of defendant's motion to suppress.* The defendant contends that the Commonwealth cannot maintain its interlocutory appeal under G. L. c. 278, § 28E, because it did not save an exception to the judge's order allowing the defendant's motion to suppress his statements to the police officers. In support of this contention he cites some of the many cases in which we have held that an alleged error in the trial of a criminal case brings nothing to this court for review unless it is based on an exception seasonably saved in the trial court. *Commonwealth* v. *Underwood,* 358 Mass. 506, 509 n.2 (1970). *Commonwealth* v. *Foley,* 358 Mass. 233, 236 (1970). *Commonwealth* v. *Myers,* 356 Mass. 343, 346 (1969).

Neither party has been able to cite any decision by this court on the issue whether the Commonwealth is required to save an exception as a condition to maintaining an appeal from a ruling adverse to it. The absence of such a decision is no doubt due to the fact that until very recently there were very few, if any, situations in which the Commonwealth

was entitled to an appeal in a criminal case. The Commonwealth's right to such an appeal was first created by G. L. c. 278, § 28E, inserted by St. 1967, c. 898, § 1, and applies only in a limited number of situations.

In view of our conclusion on the issue whether the judge erred in allowing the motion to suppress, we need not decide the consequences of the Commonwealth's failure to save an exception. While we intimate no opinion on that point, it should be obvious to prosecuting attorneys that the exposure to the risks, if any, arising from such a situation are easily avoidable by seasonably saving exceptions to otherwise appealable adverse rulings.

2. *Constitutionality of the second police interrogation.* The Commonwealth argues that the second police interrogation, which elicited the defendant's incriminatory statements, was properly conducted pursuant to the holdings of *Miranda* v. *Arizona,* 384 U.S. 436 (1966), and *Michigan* v. *Mosley,* 423 U.S. 96 (1975), and that the judge's findings and rulings to the contrary were erroneous as matter of law and not supported by the evidence. In examining the Commonwealth's contentions, we adhere to the established principle that the judge's subsidiary findings of fact will be accepted by this court absent clear error. *Commonwealth* v. *White, ante* 132, 137 (1977). See *Commonwealth* v. *Hosey,* 368 Mass. 571, 574 n.1 (1975); *Commonwealth* v. *Murphy,* 362 Mass. 542 (1972).

In *Miranda, supra* at 473-474, the Supreme Court stated the procedure to be followed once a suspect in custody invokes his right to silence under the Fifth Amemdment: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on

the individual to overcome free choice in producing a statement after the privilege has been once invoked" (footnote omitted).

In *Michigan* v. *Mosley, supra,* the Supreme Court interpreted this passage from *Miranda,* and further defined the procedural mandate. In that case, the defendant was arrested in connection with certain robberies. After he was given the Miranda warnings, he declined to answer questions concerning the robberies and was immediately returned to his cell. Approximately two hours later, he was again given the Miranda warnings before being questioned about a homicide unrelated to the robberies. At this second interrogation, the defendant made an incriminatory statement which he later sought to suppress. The trial judge denied the motion to suppress, the statement was used in evidence against the defendant at a subsequent trial, and he was ultimately convicted of murder in the first degree. On appeal, the Michigan Court of Appeals reversed the judgment of conviction, holding that the second police interrogation of the defendant was a per se violation of *Miranda.* After further appeal was denied by the Supreme Court of Michigan, the United States Supreme Court granted certiorari because of "the important constitutional question presented." *Michigan* v. *Mosley, supra* at 99.

In *Mosley,* the Supreme Court explored the question whether and in what circumstances the prosecution is prohibited from using a defendant's in-custody statement obtained after the right to remain silent had been invoked. The Court viewed resolution of the question as turning almost entirely on an interpretation of the *Miranda* language quoted above. It considered the "critical safeguard" identified in the *Miranda* passage to be a person's "right to cut off questioning." *Michigan* v. *Mosley, supra* at 103. "Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts

the coercive pressures of the custodial setting." *Id.* at 103-104. The Court then concluded, as correctly noted by the judge in the present case, that *Miranda* mandated that the admissibility of any statements obtained after the person in custody has decided to remain silent depended on whether the person's "'right to cut off questioning' was 'scrupulously honored.'" *Id.* at 104. See *Commonwealth* v. *Dustin*, 373 Mass. 612, 615 (1977); *United States* v. *Olof*, 527 F.2d 752, 754 (9th Cir. 1975). In concluding that the defendant's right to cut off questioning *was* scrupulously honored, and, consequently, that his Miranda rights had not been violated, the Court in *Mosley* stressed that, after the defendant initially stated he wished to remain silent, the police had immediately ceased interrogation. Questioning was resumed "only after the passage of a significant period of time and the provision of a fresh set of warnings," and the second interrogation was restricted "to a crime that had not been a subject of the earlier interrogation." *Id.* at 106.

In applying the reasoning of *Mosley* to the facts of the present case, the judge found that the actions of the police, in interrogating the defendant after he invoked his right to remain silent, differed substantially from the procedure declared proper in *Mosley.* He noted that instead of returning the defendant to his cell after he had exercised his right to remain silent, as was the case in *Mosley,* the police attempted to convince the defendant to talk. The judge found that by (a) placing the "wanted poster" in front of the defendant only a few minutes after his attorney had left the police station, (b) "telling" the defendant that he could not have been in Florida at the time he claimed because they had discovered his fingerprints at the scene of a flower shop-post office holdup, and (c) asking the defendant if he wanted to talk further after he had blurted out a rather incriminatory response, the police had not honored the defendant's right to cut off questioning.

Moreover, the judge compared the time interval which had elapsed in *Mosley* before the second interrogation of the defendant to that in the instant case. In *Mosley,* the interval

was over two hours; in the present case it was only five minutes. In finding that such a short time period could not be considered as significant as the two hours in *Mosley*, the judge cited the Supreme Court's pronouncement that "[t]o permit the continuation of custodial interrogation after a momentary cessation would clearly frustrate the purposes of *Miranda* by allowing repeated rounds of questioning to undermine the will of the person being questioned." *Michigan* v. *Mosley, supra* at 102.

We agree with the judge's interpretation of the *Mosley* decision and with his application of it to the facts in the present case. Although *Miranda* cannot be read as a *"per se* proscription of indefinite duration" against further questioning by the police once the person in custody has indicated a desire to remain silent, *Michigan* v. *Mosley, supra* at 102-103, and cases cited at n.9, it appears not to permit the resumption of questioning after a mere "momentary respite." *Id.* at 102. See *United States* v. *Jakakas,* 423 F. Supp. 564, 569 (E.D.N.Y. 1976); *United States* v. *Clayton,* 407 F. Supp. 204, 207 (E.D. Wis. 1976).

In suppressing the defendant's statements, the judge relied on a third element present in *Mosley* which he found to be absent from the facts in the case at bar. Where in *Mosley* the Supreme Court found the second interrogation of the defendant to have been restricted to a crime which had not been a subject of the earlier interrogation, *Michigan* v. *Mosley, supra* at 106, the judge in the present case found that the second interrogation of the defendant was focused on the homicide — the incident about which the defendant had only moments before invoked his right to silence. The judge found that the use of the flower shop-subpostal office "wanted poster" was a "subtle" manner of influencing the defendant to talk about the homicide, and it appears that from the time the defendant's attorney, Mr. Ketterer, was called back to the police station, the police evidenced a primary interest in questioning the defendant about the homicide. After the police displayed the poster to the defendant and he gave an incriminating reply relative to the

homicide, they immediately questioned him further as to whether he wanted to talk about the homicide even though his attorney had advised him not to give the police any information. We think at that point, where the questioning of the defendant was not restricted to an unrelated crime, the police had departed from the procedure approved in *Mosley*, and that the judge was warranted in finding the defendant's Miranda rights to have been violated. See *United States* v. *Olof*, 527 F.2d 752, 754 (9th Cir. 1975); *United States* v. *Jakakas*, 423 F. Supp. 564, 569 (E.D.N.Y. 1976); *United States* v. *Clayton*, 407 F. Supp. 204, 207 (E.D. Wis. 1976). See also *United States* v. *Maddox*, 413 F. Supp. 60, 65-66 (W.D. Okla. 1976). Cf. *United States* v. *Davis*, 527 F.2d 1110, 1111 (9th Cir.), cert. denied, 425 U.S. 953 (1976).

We note further the observation of *Miranda* that the presence of counsel, when statements are taken from an individual during interrogation, ensures that such statements made in "the government-established atmosphere are not the product of compulsion." *Miranda* v. *Arizona*, 384 U.S. 436, 466 (1966). As detailed in the judge's findings of fact, the defendant here had been brought to the police station by Mr. Ketterer whom the police called back to the station at a later time when they decided to interrogate the defendant in regard to a homicide. The police were present when counsel advised the defendant that he should not make a statement about involvement in or knowledge of the homicide, and when the defendant stated, in response to their questioning, that he did not wish to say anything. Despite counsel's involvement in such a sequence of events, the police began to re-interrogate the defendant *immediately* on his counsel's departure. In *Miranda* the Court observed further that the presence of counsel when statements are being taken from an individual during interrogation "obviously enhances the integrity of the fact-finding processes in court. The presence of an attorney, and the warnings delivered to the individual, enable the defendant under otherwise compelling circumstances to tell his story without fear,

effectively, and in a way that eliminates the evils in the interrogation process." *Id.* In view of the totality of the circumstances of the case, the failure of the police to recall Mr. Ketterer to the station when, about five minutes after his departure, they began to interrogate the defendant a second time, warrants the judge's suppression of the defendant's statements.

In summation, *Miranda* requires that after warnings are given to a person in custody he be given a continuous opportunity to exercise his rights during custodial interrogation. See *Commonwealth* v. *Dustin*, 373 Mass. 612, 614 (1977), *Commonwealth* v. *Mahnke*, 368 Mass. 662, 692 (1975), cert. denied, 425 U.S. 959 (1976), and *Commonwealth* v. *McKenna*, 355 Mass. 313, 323-325 (1969). Since "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights," *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938), quoting from *Aetna Ins. Co.* v. *Kennedy*, 301 U.S. 389, 393 (1937) (*Commonwealth* v. *White, ante* 132, 137 [1977]), "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination . . . ." *Miranda* v. *Arizona*, 384 U.S. at 475. *Commonwealth* v. *White, supra. Commonwealth* v. *Dustin*, 373 Mass. 612, 614 (1977). *Commonwealth* v. *Cain*, 361 Mass. 224, 228 (1972). The judge apparently concluded that the Commonwealth did not sustain its burden of proof on the issue of waiver, and he therefore held that the second police interrogation, conducted after the defendant, on the advice of counsel, had asserted his right to remain silent, was violative of the defendant's privilege against self-incrimination. There was ample evidence to support the subsidiary findings made by the judge and on which he based his ultimate holding.

3. *Conclusion.* The order of the judge allowing the motion to suppress evidence is affirmed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*