Commonwealth *v.* Leitzsey.

COMMONWEALTH *vs.* ANNETTE LEITZSEY.

Berkshire. December 7, 1995. - January 12, 1996.

Present: LIACOS, C.J., ABRAMS, O'CONNOR, GREANEY, & FRIED, JJ.

*Grand Jury. Practice, Criminal*, Grand jury proceedings, Assistance of counsel, Jury and jurors, Fair trial, Argument by prosecutor, Instructions to jury, Capital case. *Jury and Jurors. Constitutional Law*, Jury, Fair trial.

On review of a murder conviction by this court pursuant to G. L. c. 278, § 33E, the defendant demonstrated no error in trial counsel's failure to move to dismiss the indictments, where the grand jury had a sufficient and proper basis to warrant their return of the indictments [697-698], and where an alleged misstatement of a witness testifying before the grand jury could not, in the circumstances, have influenced the grand jury's decision [698].

On review of a murder conviction by this court pursuant to G. L. c. 278, § 33E, the defendant did not demonstrate any error in the judge's failure to dismiss two jury venires which did not have any black members, where there was no showing that any underrepresentation in the venires of any distinctive group was due to systematic exclusion of the group in the jury selection process. [699-701]

On review of a murder conviction by this court pursuant to G. L. c. 278, § 33E, there was no merit to the defendant's contention that the prosecutor's final argument was improper. [701]

On review of a murder conviction by this court pursuant to G. L. c. 278, § 33E, the defendant demonstrated no error in his trial counsel's failure to request an instruction on alleged inadequacies of the police investigation, where counsel had argued the issue to the jury and where the decision to give such an instruction, in any event, remained within the discretion of the trial judge. [701-702]

INDICTMENTS found and returned in the Superior Court Department on May 1, 1991.

The cases were tried before *William W. Simons*, J.

*Stephen Neyman* for the defendant.

*Anne M. Kendall,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury in the Superior Court convicted the defendant, Annette Leitzsey, of murder in the first degree by reason of deliberate premeditation and extreme atrocity or cruelty, and larceny in a building, G. L. c. 266, § 20 (1994 ed.).[1] The defendant was tried with a codefendant, Herman J. Kempson, who was acquitted by the jury on a charge that he was an accessory after the fact of murder. Represented by new counsel on appeal, the defendant argues that she should be tried again because her trial counsel furnished ineffective assistance in three respects: (1) by failing to move to dismiss the indictments; (2) by failing to object to allegedly improper remarks made by the prosecutor in his closing argument; and (3) by not requesting a jury instruction on the Commonwealth's alleged failure to conduct an adequate investigation. We decide these claims under the standard set forth in G. L. c. 278, § 33E (1994 ed.), and do not exclusively focus on the adequacy of trial counsel's performance. See *Commonwealth v. Wright,* 411 Mass. 678, 682 (1992) (statutory standard of review under § 33E is more favorable to defendant than is constitutional standard for determining ineffective assistance of counsel). "In reviewing each claim of the ineffectiveness of trial counsel . . . we shall consider whether there was an error in the course of the [pretrial proceedings or the] trial (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion" (footnote omitted). *Id.* We discern no error by trial counsel, and, consequently, do not reach the second step in this inquiry. The defendant further argues that the judge erred in failing to dismiss two jury venires which did not contain any black persons. We find no merit in this claim. Finally, we conclude that there is no other basis to exercise our authority under G. L. c. 278, § 33E, to order

---

[1] The defendant received a sentence of imprisonment on the larceny conviction which was concurrent with the sentence of life imprisonment without parole imposed on the murder conviction.

a new trial or to reduce the murder conviction to a lesser degree of guilt. Accordingly, we affirm the defendant's convictions.

We need not describe the evidence in great detail. Viewing that evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Grant*, 418 Mass. 76, 77 (1994), the jury would have been warranted in finding the following facts. The victim was a fifty-two year old man who, as a result of childhood polio, was physically disabled. The defendant, who had been using cocaine, went to the victim's Pittsfield apartment to "pick up" a videocassette recorder (VCR). A woman who lived with the victim saw the defendant emerge from the victim's bedroom with bloody linens and a steak knife which was covered with dried blood. The defendant told this witness that there was blood all over and that "[she] had to beat [the victim]." The witness then called Kempson to the apartment and the defendant had him look at the victim. The defendant told Kempson that she "had to stick" the victim, and Kempson saw her holding a knife and wiping it off with a white cloth. The defendant was later seen washing off a steak knife with bleach. The defendant took a VCR from the victim's apartment with her which she eventually sold, using the money to purchase cocaine. The victim was found naked and dead, having received a total of twenty stab wounds throughout his scalp, neck, chest, upper back, and right shoulder. The medical examiner indicated that "significant force" had been used in the stabbing and that any of several wounds could have "caused death by themselves." When questioned by the police, the defendant gave contradictory statements, first denying any knowledge of the murder, then stating that she had been at the victim's apartment when Kempson, the codefendant, started to stab the victim.

The defendant testified in her own behalf. She stated that the victim had wanted to give her the VCR. When she went to get it, she and the victim became involved in a discussion during which he called her a "black bitch." Nonetheless, the victim disconnected the VCR and gave it to the defendant.

The defendant then left the victim's apartment. She returned sometime later, to find the victim arguing about drugs with Kempson.[2] The defendant indicated that Kempson had knocked the victim to the floor and stabbed him with "a poker."[3] Disregarding the victim's pleas for help, the defendant "ran out."

1. The grand jury heard evidence from fourteen witnesses (four police officers, the medical examiner, and nine laypersons). In addition to eliciting direct testimony from the witnesses, the prosecutor who was presenting the case to the grand jury read statements that a number of the witnesses had given to the police officers investigating the case. These statements were either written out by the witnesses or were oral statements that had been transcribed by the police. The prosecutor asked each witness to whom a statement was read whether the prosecutor's reading was accurate, and each witness was afforded an opportunity to add to, or delete information from, the statement as read. At the conclusion of the proceeding, the grand jury voted the indictments for murder and larceny in a building, on which the defendant was tried.

The defendant argues that her trial counsel erred by failing to file a motion to dismiss the indictments. She maintains that the prosecutor's method of presenting a large part of the evidence to the grand jury through the reading of statements to witnesses, supplemented by questions and answers, was improper, invaded the province of the grand jury, and provided insufficient evidence to support the indictments. We reject these contentions.

The prosecutor's presentation of evidence through the use of written and transcribed statements of the witnesses was permissible. This method did not constitute the presentation of incompetent evidence by the prosecutor who was not a

[2]In her second statement to the police, which, in its essential points, corresponded to her testimony at trial, the defendant referred to her codefendant as John Foster. Herman Kempson testified that he had often used the name "John Foster."

[3]According to the defendant, the "poker" she referred to was "something similar to . . . an icepick but it has a handle."

sworn witness, as the defendant alleges. Each witness validated his or her statement under oath before the grand jury who had the opportunity to see and evaluate the reliability of the evidence and the credibility of the witness. Even if we were to assume that the method of questioning chosen by the prosecutor amounted to presentation of the case on the basis of hearsay evidence (which we do not), this would not warrant dismissal of the indictments. See *Commonwealth* v. *Bishop*, 416 Mass. 169, 173-174 (1993); Mass. R. Crim. P. 4 (c), 378 Mass. 849 (1979). There was ample evidence heard by the grand jury to identify the defendant and to establish probable cause to arrest her for larceny and murder. See *Commonwealth* v. *Mattos*, 404 Mass. 672, 673 (1989), and cases cited. The grand jury, therefore, had a sufficient and proper basis to warrant their return of the indictments.

The defendant also argues that her trial counsel should have made a motion to dismiss the indictments because of testimony before the grand jury by an investigating detective which wrongly attributed to the defendant an admission that she had stabbed the victim. In his trial testimony, the detective indicated that the defendant had not made the alleged admission, and that the defendant had in fact told him that another person had stabbed the victim.

There is nothing to show that either the prosecutor or the detective who made the statement knowingly or recklessly presented any false testimony to the grand jury. See *Commonwealth* v. *Kelcourse*, 404 Mass. 466, 468-469 (1989). From all that appears, the detective may have testified accurately before the grand jury, and the record of his testimony may have been inaccurate due to stenographic error. Further, there was abundant evidence to support the indictments apart from the alleged misstatement. It can be said with assurance that any inaccuracy could not have influenced the grand jury's decision. *Commonwealth* v. *Kelcourse, supra.* No error has been shown on the part of the defendant's trial counsel in not seeking dismissal of the indictments on this ground.

2. Both the defendant and the codefendant are black; the victim was white. On the first day of empanelment, trial counsel for both defendants called to the judge's attention that the jury venire, which had been drawn from the citizens of Berkshire County, did not contain one black person. Trial counsel for the codefendant moved orally to dismiss the venire and to obtain a new venire which would reflect his (unsubstantiated) concept of Berkshire County's over-all racial makeup. The defendant's trial counsel inquired orally whether jurors from Springfield (in Hampden County) "could be brought in?" The judge denied the oral motion to dismiss and commented that a jury with some Springfield jurors "would not be a jury from this county, which I think is appropriate."

On the second day of empanelment, a new jury venire were examined in order to complete selection of the jury. The defendant's trial counsel noted that the second venire also contained no black persons; that he had now checked with "the original planning commission" and had ascertained that the percentage of black persons in Berkshire County was 1.8%; and that, based on that percentage, there should be "almost [two] [black] people out of every hundred" prospective jurors and no black persons had appeared in the "150 people here" for jury service.[4] The judge denied a renewed oral motion to dismiss the second venire made by the codefendant's trial counsel, and a renewed oral request by the defendant's trial counsel for prospective black jurors to be brought from Springfield. Based on this record, the defendant now argues that the judge's failure to dismiss the jury venires deprived her of her Federal and State constitutional

---

[4]The defendant moved to supplement the record to include a copy of the official 1990 census of the population of Massachusetts, which shows that black persons constitute 1.8% of the population of Berkshire County. The Commonwealth does not dispute the figures. We have granted the defendant's motion to supplement the record. We note, however, that the census figures established an over-all black population in Berkshire County of 1.8% in 1990; there is no way to determine what per cent of that population qualified for jury service.

rights to be tried by an impartial jury drawn from a fair cross section of the community in Berkshire County.

A challenge to the composition of a petit jury "must be raised only by a pretrial motion to dismiss . . . the venire. See *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 91 (1973); *Commonwealth* v. *Aponte*, 391 Mass. 494, 510 n.23 (1984). See also Mass. R. Crim. P. 13 (c), 378 Mass. 871 (1979); Mass. R. Crim. P. 20 (a), 378 Mass. 889 (1979); G. L. c. 277, § 47A." *Commonwealth* v. *Pope*, 392 Mass. 493, 498 (1984). The defendant presented no written pretrial motion challenging the petit jury selection process and no affidavit, memorandum of law, or factual basis which would support her claim. The present claim, therefore, is procedurally defective.

Further, to prove that a petit jury selection process infringes a defendant's constitutional right to be tried by a jury representative of a fair cross section of the community, the defendant must show "that the group alleged to be excluded is a 'distinctive group' in the community; . . . that the representation of this group in venires . . . is not fair and reasonable in relation to the number of such persons in the community; and . . . that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren* v. *Missouri*, 439 U.S. 357, 364 (1979). See *Taylor* v. *Louisiana*, 419 U.S. 522, 531 (1975); *Commonwealth* v. *Pope, supra* at 500. There is no such showing in this case. As the judge noted, petit jury venires in Berkshire County are selected randomly through a computerized State-wide system which is impartial in its selection process, and the absence of black persons in the two venires brought in and examined in this case was "simply a reflection of the way statistics fall." "[T]he procedure used in this Commonwealth to choose jury panels from lists of qualified jurors is random selection. . . . Inevitably, some panels drawn by this method will fail to represent proportionately various groupings in the population." *Commonwealth* v. *Soares*, 377 Mass.

461, 482, cert. denied, 444 U.S. 881 (1979). We conclude that the issue raised now by the defendant lacks merit.[5]

3. The defendant argues that her trial counsel erred by failing to object to a portion of the prosecutor's final argument in which the prosecutor referred to the victim's having called the defendant "a black bitch" before he was murdered.[6] The defendant maintains that the prosecutor's argument went beyond the evidence, was racially inflammatory, and improperly attributed a motive to the defendant for the crimes.

There is no merit to the argument. The defendant testified that the victim had called her "a black bitch" shortly before he was murdered. There was testimony from a Commonwealth witness that the defendant had said she stabbed the victim after he had called her a black bitch and threatened her with the police and jail. The prosecutor's argument properly relied on evidence in the case to describe the context in which the murder was committed, and the fact that the killing may have been motivated by anger, drugs, money, and an intent to steal the victim's VCR.

4. The defendant's trial counsel brought out through cross-examination of prosecution witnesses that the police may have failed fully to investigate other suspects, that they did not check certain items for fingerprints that, according to the defendant's trial counsel, might have implicated Kempson, and that they failed to test for the presence of blood on certain items in the defendant's possession. The defendant's trial counsel argued to the jury in his closing statement that the omission of certain forensic tests should be held against the prosecution in deciding whether its burden of proof had been

---

[5]We note that the judge conducted an individual voir dire of each prospective juror. Part of the inquiry included, with the defendant's consent, an examination to ascertain whether the interracial nature of the crimes would affect the prospective juror's ability to be impartial.

[6]In his closing, the prosecutor argued: "This was about a VCR and about cocaine and about [the victim's] attitude about cocaine, ladies and gentlemen. And this was about money and a wallet and people from Connecticut, and this was about . . . [the victim's] calling [the defendant] a black bitch."

satisfied. The defendant now argues that her trial counsel erred by not requesting an instruction on the supposed inadequacies of the police investigation. See *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980).

The *Bowden* decision concerned an error by a trial judge in instructing the jury that they could not consider police failure to perform certain scientific tests in deciding the case. *Id*. There was no such negative instruction in this case. "The decision whether to instruct a jury regarding the inferences that may be drawn from the failure of the police to conduct forensic tests lies within the discretion of the trial judge." *Commonwealth* v. *Cordle*, 412 Mass. 172, 177 (1992). There is no requirement that such an instruction be given, even if requested. *Commonwealth* v. *Brown*, 411 Mass. 115, 119 (1991).

The defendant's trial counsel brought out what the defense saw as deficiencies in the police investigation through cross-examination, and he urged appropriate consideration of the alleged deficiencies by the jury in their analysis of the case. He may well have thought that the request for an instruction was unnecessary, particularly since the jury had been made aware of the issue, the alleged gaps in the investigation could be found to be minimal, and the matter of an instruction was within the judge's discretion. We reject the defendant's argument on the point.

5. Having examined the entire record, we discern no basis to exercise our authority pursuant to G. L. c. 278, § 33E, to either reduce the verdict of murder in the first degree or to order a new trial.

*Judgments affirmed.*