COMMONWEALTH *vs.* ROBERT ANDERSON.[1]

Suffolk. May 7, 1997. - August 4, 1997.

Present: WILKINS, C.J., ABRAMS, O'CONNOR, GREANEY, & MARSHALL, JJ.

*Practice, Criminal,* Instructions to jury, Reasonable doubt, Capital case, Voluntariness of confession, Duplicative convictions. *Due Process of Law,* Burden of proof.

At a murder trial, the judge correctly instructed the jury on reasonable doubt and adequately conveyed to the jury the measure of certainty required to find the defendant guilty. [687-691]

At a murder trial, the judge properly instructed the jury that reasonable doubt is doubt based upon reason. [690]

No substantial likelihood of a miscarriage of justice arose at the trial of a murder case from the omission of an instruction to the jury to consider the voluntariness of the defendant's statements to police, where voluntariness of the statements was not a live issue. [691-692]

No reason appeared on the record of a murder trial for this court to exercise its authority under G. L. c. 278, § 33E, to order a new trial or to reduce the verdict. [692]

Where the jury at the trial of murder and armed robbery indictments were instructed on murder in the first degree on both deliberate premeditation and felony-murder theories and a general verdict of guilty was returned, the judgment of conviction of armed robbery was ordered vacated as duplicative inasmuch as the murder verdict may have been founded on the felony-murder theory. [692]

INDICTMENTS found and returned in the Superior Court Department on May 16, 1975.

The cases were tried before *James P. McGuire,* J., and an appeal was dismissed by him.

A petition to reinstate the appeal, filed on June 11, 1996, was considered by *Abrams,* J.

*Jeffrey L. Baler* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

---

[1]Since the time of the trial the defendant has changed his name to Marlo Dondegable. We refer to the defendant by his previous name, Robert Anderson, as it appears on the indictments. See *Commonwealth* v. *Kosilek,* 423 Mass. 449, 449 n.1 (1996).

MARSHALL, J. On December 10, 1975, a Suffolk County jury convicted the defendant, Robert Anderson, of murder in the first degree (by reason of deliberate premeditation or felony-murder), armed robbery, and the unlawful carrying of a firearm.[2] On December 18, 1975, the defendant filed a notice of appeal, but no further steps were taken in connection with his appeal. On May 17, 1977, the trial judge dismissed the appeal. On September 17, 1996, a single justice of this court allowed the defendant's petition to reinstate his appeal pursuant to G. L. c. 211, § 3.

The defendant argues that the trial judge's instructions on reasonable doubt impermissibly reduced the Commonwealth's burden of proof, and that his armed robbery conviction is duplicative of his murder conviction. The defendant also asks that, pursuant to G. L. c. 278, § 33E, we order a new trial or reduce the verdict. We conclude that the trial judge properly instructed the jury on proof beyond a reasonable doubt, and that there is no basis to exercise our power under G. L. c. 278, § 33E. We also conclude that the defendant's armed robbery conviction may have been duplicative of his conviction of murder in the first degree, and we vacate his conviction of armed robbery.

We summarize the facts as the jurors could have found them, in the light most favorable to the Commonwealth. *Commonwealth* v. *Sanna*, 424 Mass. 92, 93 (1997). On December 10, 1974, at approximately 4 P.M., the victim's fifteen year old son was tending the cash register in the victim's shoe repair shop in the Roxbury section of Boston when the defendant, one Jerry Funderberg, and a man known as "Pabst" entered the shop.[3] In response to a request for change from one of the men, the victim's son opened the register, whereupon "Pabst" reached in and removed money from the cash drawer. The victim emerged from the rear of the store. The defendant and Funderberg both had guns. As the victim walked toward them, they

---

[2]The defendant was sentenced to the mandatory life sentence for murder in the first degree, with concurrent sentences for the armed robbery conviction (from twenty to thirty years) and for unlawfully carrying a firearm (from four to five years).

[3]Funderberg and "Pabst" (Raymond Gaines) were tried together in a separate trial arising out of the robbery. They both were convicted of murder in the first degree and armed robbery. Funderberg also was convicted of unlawful possession of a handgun. We upheld their convictions in *Commonwealth* v. *Funderberg*, 374 Mass. 577 (1978).

both fired several shots, fatally wounding the victim.[4] The three men then fled to a nearby housing project.

An apartment at the housing project was used as a "shooting gallery" where customers could pay a fee to use heroin. The three men arrived there out of breath, some time after 4 P.M. Both the defendant and Funderberg were carrying pistols. The three men argued over the amount of money they had taken, "Pabst" purchased some heroin from a seller in a different apartment in the building, and all three men then retreated into a back room of the apartment. The police arrived while the men were still there, but left without searching the apartment when the proprietor of the "shooting gallery" asked them for a search warrant. Several days later, Funderberg boasted to the proprietor that he had shot the victim.

On the evening of the robbery, the defendant returned a .32 caliber revolver to Wilbur Billings that he had borrowed earlier that same day. Three of the chambers were empty. The defendant explained to Billings that he had used the bullets when "a dude was coming at him with a piece and he wasn't about to let the dude hurt him so he had to cap him."[5]

On March 2, 1975, the police arrested the defendant. That same day, and again on March 3, the defendant made statements to the police that were recorded, in which he confessed to his involvement in the robbery and the shooting of the victim. Although he admitted to firing three shots at the victim, he said that he had intentionally aimed his weapon to miss the victim.

1. *Jury instructions on reasonable doubt.* The defendant argues that errors in the judge's instruction, quoted in the margin,[6] improperly lowered the Commonwealth's burden of

---

[4]It was later determined that the victim died from a gunshot wound to his head. The bullet recovered from the victim's head was a .22 caliber bullet from Funderberg's pistol.

[5]Billings testified that by "cap him," he understood the defendant to mean fire a pistol or shoot.

[6]The judge instructed the jury as follows:

"Now, I have said that it is the burden of the Commonwealth to proceed, as indeed it is, and it must satisfy you, the jury, beyond a reasonable doubt as to every essential element of the indictments returned against him, proof beyond a reasonable doubt. Now, the word, 'doubt,' of course, connotes uncertainty, and our law requires proof

proof in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Specifically, the defendant claims that the judge failed to express the "near certainty" required for conviction, erroneously used the phrase "doubt based on reason," and improperly defined "reasonable doubt" in negative terms without balancing the definition with positive terms. At trial the defendant did not object to the portion of the charge regarding reasonable doubt; we review the challenged instruction under G. L. c. 278, § 33E, to determine whether the instruction on reasonable doubt created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Torres*, 420 Mass. 479, 483 (1995).[7]

When we review a jury instruction to determine whether the charge unconstitutionally diminishes the Commonwealth's burden of proof, we consider "whether a reasonable juror could have used the instruction incorrectly." *Commonwealth* v. *Rosa*,

---

beyond a reasonable doubt. Now, that does not mean proof beyond all doubt. It does not mean proof beyond a capricious or a whimsical doubt. It does not mean proof to a mathematical certainty, but you will consider the evidence that has been adduced before you in a careful, thoughtful, and thorough manner, and if then, after having done that there remains a doubt based upon reason, that, of course, is a reasonable doubt, and if there remains such a reasonable doubt, then it follows that the Commonwealth has not proved the essential elements of the cases against this man, and, therefore, in such a situation, you would be required to acquit him, but if after having given the evidence a careful, thoughtful, logical consideration and gone over in a thorough manner, and if you are satisfied that there is no doubt founded upon reason on any essential element of the charges against him, then, likewise, it would be your duty as jurors to find the defendant guilty."

[7]The defendant argues summarily that his counsel rendered him ineffective assistance when he failed to object to the portion of the jury charge on reasonable doubt. Because the statutory standard under G. L. c. 278, § 33E, is more favorable to the defendant than is the constitutional standard for determining ineffective assistance of counsel, we decide this claim under G. L. c. 278, § 33E, and do not focus exclusively on the adequacy of trial counsel's performance. *Commonwealth* v. *Leitzsey*, 421 Mass. 694, 695 (1996). "In reviewing each claim of the ineffectiveness of trial counsel . . . we shall consider whether there was an error in the course of the trial . . . and, if there was, whether that error was likely to have influenced the jury's conclusion." *Id.* at 695, citing *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). Here, because there was no error in the jury instructions on reasonable doubt, trial counsel was not remiss in not objecting to these instructions.

422 Mass. 18, 27 (1996).[8] In making that determination, we review the charge as a whole. See *id.*; *Commonwealth* v. *Pinckney*, 419 Mass. 341, 342 (1995), quoting *Victor* v. *Nebraska*, 511 U.S. 1, 5 (1994) ("taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury"); *Commonwealth* v. *Libby*, 405 Mass. 231, 234 (1989) (defendant's claim is not supported "by a reading of the charge as a whole"); *Commonwealth* v. *Lanoue*, 392 Mass. 583, 591 (1984), *S.C.*, 400 Mass. 1007 (1987), and 409 Mass. 1 (1990) ("propriety of [reasonable doubt] instructions must be determined from a consideration of the charge as a whole and not from a consideration of isolated portions"). Reviewing the jury charge in its entirety, we are satisfied that in this case the judge properly instructed the jury on reasonable doubt.

First, we do not agree that the trial judge impermissibly failed to instruct the jury that a "near certitude" was required for conviction. See *Jackson* v. *Virginia*, 443 U.S. 307, 315 (1979). According to the defendant, the "heart" of the traditional charge stemming from *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850), is the language requiring that the Commonwealth prove its case to a "moral certainty." Where we have approved of alternative jury instructions, he says, other language approximating "near certitude" has been substituted.

The reasonable doubt standard defies easy explication, and no precise formulation is required to advise the jury of the Commonwealth's burden of proof. See *Commonwealth* v. *Pinckney*, *supra* at 342, quoting *Victor* v. *Nebraska*, *supra* at 5 (Federal Constitution "does not require that any particular form of words be used in advising the jury of the government's burden of proof . . ."). And we have never held that the omission of the *Webster* charge or its equivalent constitutes a violation of a defendant's due process rights. *Commonwealth* v. *Randolph*, 415 Mass. 364, 367 (1993) ("we have never required conformity to *Webster* . . . though we recommend it"). Here, the judge instructed the jury that they were to be satisfied beyond a reasonable doubt as to every essential element of each of the indictments, impressed upon the jury their duty to deliberate

---

[8]"Federal law finds error in jury instructions only with a 'reasonable likelihood' that the jury did use an inappropriate standard." *Commonwealth* v. *Rosa*, 422 Mass. 18, 27 n.10 (1996). Under art. 12, we use a standard more favorable to a defendant; we look for "possible misunderstandings by reasonable jurors." *Id.*, and cases cited.

with great care, and informed them that they would be "required to acquit" the defendant unless they found with respect to every essential element of any charge that they had no doubt based on reason. This was adequate to convey to the jury the measure of certainty required to find the defendant guilty.

Second, the defendant argues that the phrases "doubt based on reason" and "doubt founded upon reason" impermissibly shifted the burden of proof to the defendant; this language, he says, erroneously required him to demonstrate the existence of a reason leading to doubt. We do not agree. The Supreme Court has stated: "A 'reasonable doubt,' at a minimum, is one based upon 'reason'," *Jackson* v. *Virginia*, 443 U.S. 307, 317 (1979), and it is a doubt "based on reason which arises from the evidence or lack of evidence." *Johnson* v. *Louisiana*, 406 U.S. 356, 360 (1972). We see no reason to conclude that an instruction that reasonable doubt is a doubt based on or founded upon reason causes any burden shifting. We distinguish cases criticizing language defining reasonable doubt as doubt based *upon a reason* rather than doubt based *upon reason*, as charged in this case. See, e.g., *Commonwealth* v. *Lanoue*, 392 Mass. 583, 591 (1984) ("phrase, '[a] doubt for which a good reason can be given,' should not have been used"); *Commonwealth* v. *Bjorkman*, 364 Mass. 297, 309 (1973) ("the phrase 'doubt based upon a reason,' even if of doubtful propriety standing alone, could not have caused any prejudicial shifting of the Commonwealth's burden of proof in the minds of the jurors"). Language requiring *a* reason may be burden-shifting, for it may remove the jurors' attention from the sufficiency of the evidence and suggest that they must find an articulable reason to acquit. See *Commonwealth* v. *Bjorkman*, *supra* at 308. This concern does not arise when the jury is properly instructed that reasonable doubt is doubt based upon reason.

Last, relying on *Commonwealth* v. *Watkins*, 377 Mass. 385, 388, cert. denied, 442 U.S. 932 (1979), the defendant argues that the instruction on reasonable doubt was erroneous because it "included negative formulations of reasonable doubt but failed to include positive formulations," creating an "unbal- · anced" charge; he says that we have declined to reverse a conviction only when the unbalanced instruction included a proper definition of reasonable doubt. We are not persuaded. Here, the judge gave the jury an adequate definition of reasonable doubt; because the defendant's argument is predicated

upon his claim that the charge did not include a proper defini-
tion of reasonable doubt, it fails. We are satisfied that, when
read as a whole, the charge properly defined proof beyond a
reasonable doubt.

2. *Relief under G. L. c. 278, § 33E.* In accordance with our
statutory obligations, we review the record as a whole and
consider whether there is reason to conclude that the affirmance
of the conviction would give rise to a substantial likelihood of a
miscarriage of justice. We find no reason to conclude there is
any such likelihood.

We do comment on one aspect of the trial that has been raised
by the Commonwealth, the omission of an instruction to the
jury to consider the voluntariness of the defendant's statements
to the police in accordance with our "humane practice"
doctrine. The defendant never raised the issue at trial and has
not done so on appeal. We nevertheless review the record to
determine whether this omission was error and whether it gave
rise to a substantial likelihood of a miscarriage of justice. See
*Commonwealth* v. *Parham*, 390 Mass. 833, 841 (1984). We
conclude that the judge properly did not submit the voluntari-
ness of the defendant's confessions to the jury for consideration.

Under our "humane practice" doctrine, where, as here, a trial
judge has made an initial determination concerning the volun-
tariness of a confession, he "must instruct the jury to pass on
the voluntariness of the confession if voluntariness is a live is-
sue at trial." *Id.*; *Commonwealth* v. *Alicea*, 376 Mass. 506, 523
(1978).[9] We think that such consideration by the jury was not
compelled in this case because we conclude that voluntariness
was not a live issue at trial; there was no evidence before the
jury that could have supported the conclusion that the confes-
sions were not voluntary. See *Commonwealth* v. *Parham, supra*

---

[9]The first part of the procedure is required by the United States Constitu-
tion, and the second part, although not constitutionally required, is a matter of
long-standing practice in the Commonwealth. *Commonwealth* v. *Parham*, 390
Mass. 833, 841 (1984); *Commonwealth* v. *Cole*, 380 Mass. 30, 40 (1980). The
constitutionally required initial determination was satisfied in this case. The
judge conducted a voir dire hearing and determined, correctly in our view,
that the defendant's statements to the police were voluntary. At the hearing the
defendant offered no evidence that he was "particularly susceptible" to police
pressure, that he was suffering from mental impairment or intoxication, or that
the police used excessive or unfair pressure to compel his admission. See
*Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 539-540 (1990); *Com-
monwealth* v. *Tavares*, 385 Mass. 140, 145, cert. denied, 457 U.S. 1137 (1982).

at 841-842; *Commonwealth* v. *Vazquez*, 387 Mass. 96, 102 (1982); *Commonwealth* v. *Cole*, 380 Mass. 30, 40 (1980). Although there was conflicting testimony on the voluntariness of his confession by the defendant himself during voir dire, this evidence was never before the jury. Raising the issue of voluntariness before the trial and invoking the right to a voir dire proceeding alone does not give rise to the obligation of the judge to give the "humane practice" instructions *sua sponte.* See *Commonwealth* v. *Parham, supra; Commonwealth* v. *Alicea, supra* at 523. Contrast *Commonwealth* v. *Harris*, 371 Mass. 462, 472 (1976); *Commonwealth* v. *Vazquez, supra* at 102-103; *Commonwealth* v. *Cole, supra* at 40-41. In this case, the question of voluntariness was not raised "with sufficient point to require an express admonition to the jury by the Court" on its own motion. *Commonwealth* v. *Alicea, supra* at 523. We find no reason to exercise our authority under G. L. c. 278, § 33E, either to order a new trial or to reduce the verdict to murder in the second degree.

3. *Duplicative conviction.* The defendant argues that his conviction for armed robbery must be vacated because it is duplicative of the conviction for murder in the first degree. This issue is not contested by the Commonwealth. When the possibility exists that a jury may have reached a verdict of murder on the basis of a felony-murder theory, a separate conviction and sentence for the underlying felony cannot stand. See *Commonwealth* v. *Raymond*, 424 Mass. 382, 396-397 (1997); *Commonwealth* v. *Bennett*, 424 Mass. 64, 69 (1997). The jury were instructed on murder in the first degree on both deliberate premeditation and felony-murder theories, and the jury returned a general verdict of guilty without specifying under which theory they were convicting the defendant. Because the verdict may have been founded on the felony-murder theory of culpability, we order that the judgment of conviction of armed robbery be vacated.

We affirm the conviction of murder in the first degree. We order that the judgment of conviction of armed robbery and the sentence imposed thereon be vacated and remand the matter to the Superior Court for entry of judgment consistent with this opinion.

*So ordered.*