Hillman, J.

INTRODUCTION

The defendant, Ryan Fleming (the “defendant”), has been charged with armed assault with intent to murder in violation of G.L.c. 265, § 18(b), and assault and battery with a dangerous weapon in violation of G.L.c. 265, §15A(b). These charges arise out of a stabbing, which occurred in the Town of Winchendon, Massachusetts, on March 2,2004. The defendant now moves to suppress any evidence of statements made by him to the police after his arrest on that date on grounds that this evidence was obtained in violation of the defendant’s rights to counsel and his rights to remain silent as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and by Article XII of the Declaration of Rights of the Massachusetts Constitution. Specifically, he maintains that he did not knowingly, intelligently and voluntarily waive his Miranda rights at the time of the custodial interrogation; and that his statements were not a free and voluntary act.
This court conducted an evidentiary hearing on the defendant’s motion to suppress on December 1, 2004. After careful consideration of the testimony given and the evidence presented, the defendant’s motion is ALLOWED.

FINDINGS OF FACT

On March 2, 2004, an individual was stabbed in the Town of Winchendon. In their investigation, Winchendon police visited the home of the defendant’s father, Mark Fleming (“Mr. Fleming”), seeking to question the defendant in connection with the incident. The defendant is a nineteen-year-old male who lives at home with his father. In response to the police inquiries, Mr. Fleming secured his son and brought him to the station. Mr. Fleming went into the station, leaving his son in the motor vehicle. Mr. Fleming told Sergeant William Geoffroy (“Sergeant Geoffroy”), who was the desk officer and the officer in charge of the station that evening, that he knew that the police were looking for his son and that his son wanted to turn himself in. Mr. Fleming informed the police that he has retained Attorney John Bosk (“Attorney Bosk”), a criminal defense attorney from the City of Fitchburg, to represent his son. Attorney Bosk has instructed Mr. Fleming that the defendant is not to speak with the police. Mr. Fleming told the police that Attorney Bosk advised the police not to question the defendant and that the defendant was invoking his Fifth Amendment privileges. Mr. Fleming then left the station.
Thereafter, the defendant presented himself to the police station, and Sergeant Geoffroy placed the defendant under arrest, searched him, and read him his Miranda rights. These rights were administered to the defendant verbally and then by reading a card. After reading the defendant his rights, Sergeant Geoffroy asked him if he understood, to which the defendant stated that he did. Upon request, the defendant initialed the card, acknowledging that he has been given his rights and that he understood them.
During this booking process, Sergeant Geoffroy received a telephone call from Attorney Bosk. The call was recorded, and the recording reveals that Attorney Bosk forcefully and clearly instructed the police not to question the defendant and informed the police that the defendant was invoking his Fifth Amendment rights. These instructions were conveyed to the police at least five times during the course of the conversation between Attorney Bosk and Sergeant Geoffroy. Attorney Bosk further requested to speak with the defendant. Sergeant Geoffroy informed Attorney Bosk that he would have the defendant call him back because the defendant was in the middle of the booking process and was unavailable to speak on the phone. Within five minutes of that phone call, the defendant contacted Attorney Bosk, who reiterated that he was not to speak with the police.
Subsequently, the defendant was questioned by Detective David Walsh (“Detective Walsh”), who again advised the defendant of his rights from an identical card. Detective Walsh gave the defendant the card, and instructed the defendant to read it. Detective Walsh asked the defendant if he understood his rights. The defendant answered in the affirmative, and initialed the card. The defendant gave an oral and written statement to the police. There is no audio or video recording of the statements or the questioning of the defendant.
*148 The defendant now maintains that his statements should be suppressed because they were not the product of a valid waiver of his Miranda rights. At the hearing on the defendant’s motion to suppress, the court heard testimonial evidence from a number of witnesses, including Sergeant Geoffroy, Detective Walsh, Mr. Fleming, Attorney Bosk, and the defendant himself. The defendant concedes that both Sergeant Geoffroy and Detective Walsh read him his Miranda rights on separate occasions and that he signed a card containing the Miranda warnings. The defendant further states that he was repeatedly informed by several officers, including Sergeant Geoffroy, of his need to make a statement, even after Attorney Bosk instructed the police not to question the defendant and after the defendant told the police that he has retained an attorney to represent him. At the time of his arrest and questioning, the defendant was not advised of the charge against him, nor was there any explicit indication from the police that he could freely leave the interrogation at any time. No evidence was presented to this court showing that the defendant has signed any waiver form.

RULINGS OF LAW

The defendant urges the court to suppress statements he gave to the police on the ground that they were not made voluntarily and were not made after a knowing, intelligent, and voluntary waiver of his Miranda rights.
The United States and Massachusetts constitutions protect criminal defendants against the use of their involuntary statements as evidence against them. Miranda v. Arizona, 384 U.S. 436, 467-79 (1966); Commonwealth v. Murray, 359 Mass. 541, 545-46 (1971). In ruling on a motion to suppress pretrial statements by reason of involuntariness, the court employs a three-prong analysis: (1) whether the police satisfied the requirements of Miranda v. Arizona and its progeny; (2) whether the defendant voluntarily, knowingly, and intelligently waived his Miranda rights; and (3) whether the defendant made the statement voluntarily, that is without being intimidated or coerced. Commonwealth v. Koney, 421 Mass. 295, 304 (1995); Commonwealth v. Williams, 388 Mass. 846, 850-56 (1983); Commonwealth v. Tavares, 385 Mass. 140, 145-46, cert. denied, 457 U.S. 1137 (1982). The Commonwealth bears the heavy burden of proving the voluntariness of both the defendant’s waiver of Miranda rights and the defendant’s subsequent statements beyond a reasonable doubt. Commonwealth v. Smith, 412 Mass. 823, 837 (1992).
The police are required to give a defendant Miranda warnings prior to beginning any custodial interrogation. Miranda, supra, at 444; Commonwealth v. Harris, 387 Mass. 758, 765 (1982). Custodial interrogation is questioning initiated by police officers after an individual has been taken into custody or otherwise deprived of his freedom in any significant way. Commonwealth v. Jung, 420 Mass. 675, 688 (1995). Where the Miranda requirements have not been met, any statements made by the defendant are deemed involuntary as a matter of law and must be suppressed. Smith, supra, at 829-37; Tavares, supra, at 145.
In this particular case, the defendant gave his statements at the station after he was booked and after his rights were read to him. This court must consider whether the defendant “truly understood his Miranda rights ... in order to be capable of waiving them ‘knowingly and intelligently.’ ’’ Commonwealth v. Garcia, 379 Mass. 422, 427 (1980). The defendant does not dispute that he was adequately advised of his Miranda rights. Rather, defendant argues that the statements he made to Detective Walsh were not voluntarily given, and that he did not intentionally and voluntarily waive his right to remain silent.
“Waivers of counsel must be a voluntary ... a knowing and intelligent relinquishment of a known right or privilege, a matter which depends in each case ‘upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.’ ” Edwards v. Arizona, 451 U.S. 477, 482 (1981) (citations omitted). See also Commonwealth v. Taylor, 374 Mass. 426, 433 (1978). The Commonwealth cannot show a valid waiver by showing “only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.” Edwards, supra, at 484.
In his motion to suppress statements he made to the police in response to questioning at the police station, the defendant primarily contends that he did not waive his rights voluntarily and that any questioning from the police were in violation of his Miranda rights after being advised that he was represented by counsel. The defendant argues that the police should have ceased questioning in accordance with Attorney Bosk’s repeated instruction.
The Supreme Judicial Court announces a rule that obligates the police “to apprise the defendant of his attorney’s communication that bore directly on the right to counsel.” Commonwealth v. Mavredakis, 430 Mass. 848, 861 (2000), quoting State v. Stoddard, 206 Conn. 157, 169 (1988). “When an attorney identifies himself or herself to the police as counsel acting on a suspect’s behalf, the police have a duty to stop questioning and to inform the suspect of the attorney’s request immediately.” Id. Upon the acceptance of the attorney’s assistance, the police must suspend questioning until the defendant is afforded an opportunity to consult with the attorney. Id. The Commonwealth bears the burden of proving that the defendant declined the offer of legal advice. Id.
*149 From the time the defendant entered the station, Sergeant Geoffroy and Detective Walsh were put on notice of the defendant’s intention to invoke his right to remain silent. Not only did the defendant’s father inform the police officers of his son’s invocation of that right, but the defendant’s own attorney also contacted the police and reiterated at least five times that the police are not to question the defendant and that the defendant was exercising his right to remain silent. The court acknowledges the long-standing rule that ”[t]he principal responsibility for invoking the protections guaranteed by Miranda v. Arizona, supra, and art. 12 rests squarely in the hands of criminal defendants.” Commonwealth v. Beland, 436 Mass. 273 (2002) (citation omitted). In this case, the defendant confirmed to the police that which Mr. Fleming and Attorney Bosk had already indicated, namely, that he is represented by counsel. This fact alone should indicate to the police that he does not unequivocally waive his right to remain silent. Such statement adequately serves as the defendant’s assertion of his constitutional right to counsel and his privilege against self-incrimination.
Clearly, the more prudent and constitutionally preferable course would have been for the police to withhold any questioning until the arrival of the defendant’s attorney. The police here, however, ignored the defendant’s statement and were insistent on the defendant making a statement. Sergeant Geoffroy and other officers’ comment that the defendant “have to make a statement” or “need to make a statement” is nothing more than a deliberate attempt to obtain information from the defendant. It is evident that the defendant was beginning to waver in an atmosphere more coercive than mere police custody. Under the circumstances, there can be no doubt that the police deliberately set out to elicit any statements from the defendant.
The fact that the defendant had been read his Miranda rights before does not preclude a finding that the police violated his asserted right to counsel. With the exception of his conversation with Attorney Bosk, the defendant was never out of one of the officer’s presence, and he had no time to reflect on the situation and decide what to do. The police did not even attempt to discover whether the defendant intended to waive that right. The evidence does not indicate any questioning from Detective Walsh concerning the defendant’s willingness to waive his right nor was any waiver form presented to the defendant. While the police appropriately informed the defendant of his attorney’s request and provided him an opportunity to communicate with Attorney Bosk, they failed to carry the heavy burden of showing that the defendant declined the offer of legal advice from his attorney. The circumstances do not indicate that the police made “ ‘every effort’ ... to see to it that the defendant did not unknowingly relinquishbasicconstitutionalprotectionsindispensable to a fair trial.” Commonwealth v. Hosey, 368 Mass. 571, 578 (1975) (citation omitted). The defendant’s statements, thus, came about as a result of police subterfuge and a purposeful attempt to subvert his rights. Commonwealth v. White, 374 Mass 132, 136 (1977). The evidence does not support a finding that the defendant affirmatively changed his mind against the assistance of counsel.
Based on the totality of the circumstances, this court finds that the Commonwealth failed to sustain its burden of proving that the defendant’s statements were voluntary by a standard of proof beyond a reasonable doubt. Accordingly, the defendant was interrogated in violation of his asserted Fifth Amendment right and any statements made by him were not the product of a knowing, intelligent, and voluntary waiver of his Miranda rights.[1]

ORDER

It is therefore ORDERED that the defendant’s statements made on March 2, 2004 to Winchendon police be suppressed, and the defendant’s motion to suppress be ALLOWED.

The defendant’s final contention involves the police’s failure to record the interrogation. Although it is certainly preferred practice that the police record all interrogations of suspects, failure to do so does not require the suppression of any statements procured during an unrecorded interrogation. See Commonwealth v. DiGiambattista, 442 Mass. 423, 447-48 (2004).
The remedy, however, required by the Supreme Judicial Court for admitting an unrecorded interrogation is a jury instruction:
[W]hen the prosecution introduces evidence of a defendant’s confession or statement that is the product of a custodial interrogation or an interrogation conducted at a place of detention (e.g., a police station), and there is not at least an audiotape recording of the complete interrogation, the defendant is entitled (on request) to a jury instruction advising that the state’s highest court has expressed a preference that such interrogations be recorded whenever practicable, and cautioning the jury that, because of the absence of any recording of the interrogation in the case before them, they should weigh evidence of the defendant’s alleged statement with great caution and care.
Id. This court further notes that the Supreme Judicial Court’s decision in DiGiambattista was issued on August 16, 2004, approximately five months after the interrogation at issue here. Accordingly, that decision cannot be binding on this case. The defendant’s assertion that his rights were violated because the Commonwealth failed to make an audio or audio-visual recording of the defendant’s waiver and statements is therefore without merit. Nevertheless, the defendant’s motion is granted for the reasons set forth in this memorandum.